[No. E032525. Fourth Dist., Div. Two. Oct. 24, 2003.]

HOSSAIN SAHLOLBEI, Plaintiff and Appellant, v.
PROVIDENCE HEALTHCARE, INC. et al., Defendants and Respondents.

COUNSEL

Law Offices of Henry R. Fenton, Henry R. Fenton, Dennis E. Lee and Harry J. Nelson for Plaintiff and Appellant.

Fulbright & Jaworski, Mark A. Kadzielski and Abbie P. Maliniak for Defendants and Respondents.

## OPINION

**RICHLI, J.**—Plaintiff Hossain Sahlolbei, M.D., appeals from the denial of his motion for a preliminary injunction in this action arising from the termination of his privileges as a member of the staff of Palo Verde Hospital (PVH). We conclude PVH was required to provide plaintiff with a hearing prior to, not after, terminating his staff membership, and that plaintiff was entitled to an injunction reinstating his membership pending such a hearing. Accordingly, we reverse the trial court's order.

I

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*

#### 1. *Appointment of plaintiff to PVH staff*

Plaintiff is a physician specializing in surgery. PVH is a licensed acute care hospital in Blythe, California, and is the only general acute care hospital in that community. The PVH Board of Directors (the Board), the governing body of PVH, appointed plaintiff to the medical staff in the spring of 1998, for a two-year term. He was reappointed in January 2000 and again on January 17, 2002. Beginning January 1, 2002, plaintiff took the positions of vice-chair of the PVH medical staff and cochief of surgery.

## 2. *Rescission of plaintiff's reappointment*

After plaintiff was reappointed, in January and February 2002, David Conejo, chief executive officer of PVH and a member of the Board, requested that the hospital medical staff[1] investigate alleged improper behavior by plaintiff. The behavior consisted of alleged derogatory comments about Conejo and PVH's chief nursing officer and disruptive conduct in dealings with coworkers.

On February 11, 2002, the Board informed plaintiff that its approval of his reappointment application the previous month was in error. According to the Board, a January 2002 accreditation survey had pointed out deficiencies in the reappointment process, which had to be corrected. Due to these deficiencies, the Board had rescinded its January action and would review all appointments in February 2002.

## 3. *Ad hoc committee investigation*

On March 27, 2002, the Board asked the medical executive committee to report on allegations that plaintiff had altered, and had been untruthful in, his reappointment application for January 2002 and had engaged in disruptive behavior. On April 16, 2002, the committee reported it had found no improprieties on plaintiff's part and recommended approval of his application.

The Board took the position that the committee had not adequately investigated the allegations of disruptive behavior and appointed an ad hoc committee, composed of board members, to investigate those allegations. The ad hoc committee interviewed 17 individuals during early May 2002, including plaintiff. The committee's report summarized numerous allegations of disruptive conduct by plaintiff in his dealings with PVH personnel, including staff physicians and nurses, from 1999 to 2002. Some coworkers reportedly quit because of plaintiff or refused to work with him. The committee also reported that most of the nonphysicians interviewed stated plaintiff's behavior could potentially endanger the lives of patients.

After completing its investigation, the ad hoc committee on May 22, 2002, recommended the Board deny plaintiff's application for reappointment. The same day, Conejo wrote to plaintiff stating that the Board had recommended

---

[1] "Hospitals are required by law to have a medical staff association which oversees physicians who are given staff privileges to admit patients and practice medicine in the hospital. A hospital's medical staff is a separate legal entity, an unincorporated association, which is required to be self-governing and independently responsible from the hospital for its own duties and for policing its member physicians. [Citations.]" (*Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1130, fn. 2 [73 Cal.Rptr.2d 695].)

denial of his application and that, due to the conflict between the recommendations of the Board and the medical executive committee, the matter would be submitted to a joint conference committee. Conejo also stated that plaintiff's staff privileges would continue in effect until June 12, 2002, when the Board made its final decision.

### 4. *Consultant report*

While the ad hoc committee investigation was proceeding, the Board requested that The Greeley Company, a consulting company based in Massachusetts, review certain of plaintiff's surgical cases to evaluate the quality of patient care. The company's report, dated May 21, 2002, summarized 11 cases. It noted six cases with no problems; two with minor problems not affecting patient outcome; two in which disease or symptoms were caused, exacerbated, or allowed to progress; and one in which longevity and/or functional quality of life was shortened or adversely affected.

### 5. *Denial of reappointment*

On June 6, 2002, the joint conference committee decided to forward plaintiff's reappointment application to the full Board. On June 12, 2002, the Board voted not to reappoint plaintiff. The following day, Conejo wrote to plaintiff stating that the Board had denied his application for reappointment, and his privileges would expire that date. Conejo stated the decision was based on (1) repeated disruptive behavior; (2) lack of truthfulness on the reappointment application; and (3) substantial concerns regarding quality of care to patients. Conejo also notified plaintiff he had the right to a hearing before an ad hoc committee to review the decision.

### B. *Procedural Background*

Plaintiff filed this action on June 10, 2002, and filed a first amended complaint (complaint) eight days later, seeking reinstatement of his privileges and damages. The complaint named as defendants PVH and related companies, the Board and individual board members, and a former PVH chief executive officer (collectively, defendants). The complaint alleged 12 causes of action arising from the termination of plaintiff's staff privileges, based on tort, contract, and statutory violations. Plaintiff prayed for declaratory and injunctive relief, a writ of mandamus under Code of Civil Procedure section 1085 or in the alternative a writ of administrative mandamus under Code of Civil Procedure section 1094.5, and monetary damages.

Concurrently with the amended complaint, plaintiff filed a motion for a preliminary injunction or, in the alternative, for a peremptory writ of mandate

under Code of Civil Procedure section 1085 or 1094.5. Plaintiff sought to require defendants to (1) set aside the review of his reappointment and the pending termination of his privileges; (2) reinstate him to the medical staff; and/or (3) take no further action to prevent his exercise of his staff privileges unless carried out pursuant to the procedural requirements of the PVH bylaws.

After a hearing, the court denied plaintiff's motion on the grounds that (1) plaintiff had not exhausted the administrative remedies provided for in the PVH bylaws; (2) it did not appear there was a reasonable likelihood plaintiff would prevail on the merits of his case; and (3) the denial of plaintiff's application was a completed action that the court would not overturn, because plaintiff had ample time before the action was taken to seek to prevent the Board from taking the action. Plaintiff appealed from the order denying a preliminary injunction.

## II

## DISCUSSION

### A. *Standard of Review*

■ In determining whether to issue a preliminary injunction, the trial court considers: (1) the likelihood that the moving party will prevail on the merits and (2) the interim harm to the respective parties if an injunction is granted or denied. The moving party must prevail on both factors to obtain an injunction. Thus, where the trial court denies an injunction, its ruling should be affirmed if it correctly found the moving party failed to satisfy either of the factors. (*Abrams v. St. John's Hospital & Health Center* (1994) 25 Cal.App.4th 628, 635–636 [30 Cal.Rptr.2d 603].)

■ Where the evidence before the trial court was in conflict, its factual determinations, whether express or implied, are reviewed for substantial evidence. We interpret the facts in the light most favorable to the prevailing party. (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625 [43 Cal.Rptr.2d 774].)

■ Generally, the standard of review for denial of a preliminary injunction is whether the trial court committed an abuse of discretion. However, a party's likelihood of prevailing on the merits sometimes can be determined as a matter of law. (*Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.* (1993) 19 Cal.App.4th 615, 624 [23 Cal.Rptr.2d 555]; *Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595–596 [257 Cal.Rptr. 559].) In that case,

de novo review as to that factor is proper. (*Thomsen v. City of Escondido* (1996) 49 Cal.App.4th 884, 890 [56 Cal.Rptr.2d 902].)

With these principles in mind, we consider the grounds on which the trial court denied a preliminary injunction.

### B. *Exhaustion of Administrative Remedies*

The first ground for the trial court's denial of a preliminary injunction was that plaintiff had failed to exhaust his administrative remedies.

#### 1. *The exhaustion doctrine*

"[A] doctor who is challenging the propriety of a hospital's denial or withdrawal of staff privileges must pursue the internal remedies afforded by that hospital to a final decision on the merits before resorting to the courts for relief . . . . 'The exhaustion doctrine "is not a matter of judicial discretion, but is a fundamental rule of procedure" [citation] under which "relief must be sought from the administrative body and this remedy exhausted before the courts will act" [citation].' [Citation.]" (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619–620 [113 Cal.Rptr.2d 309] (*Unnamed Physician*).)

#### 2. *Internal remedies under the PVH bylaws*

The PVH bylaws provided that action adverse to a physician, including denial of reappointment, would entitle the physician to a hearing upon request. At the conclusion of the hearing, the hearing panel would make a recommendation to the Board, which would then make a decision. If the decision was adverse to the physician, he or she had the right to request appellate review by the Board. After appellate review, the Board would make a final decision.

Plaintiff does not dispute these internal remedies were available to him. However, he contends that due process and statutory provisions required that the remedies, and specifically a hearing, be provided him *before* his privileges could be terminated. He asserts that the failure to provide a pretermination hearing rendered the internal remedies inadequate and made it unnecessary for him to exhaust them.

#### 3. *Due process requirements for termination of staff privileges*

 Once appointed to a hospital medical staff, a physician "may not be denied reappointment to the medical staff absent a hearing and other procedural prerequisites consistent with minimal due process protections."

(*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 824 [140 Cal.Rptr. 442, 567 P.2d 1162].) "[T]he full rights of staff membership *vest* upon appointment, subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements." (*Id.* at pp. 824–825.) Due process in this context requires, at least, that a physician be afforded, among other rights, "a hearing before the deciding board"; "a written statement of the charges against him"; and "the right to call his own witnesses." (*Id.* at pp. 815–816, fn. 12.)

> 4. *Requirements for termination under Business and Professions Code section 809.1 et seq.*

█ In 1989, the Legislature essentially codified the requirements previously recognized in case law governing a physician's right to a hearing regarding the termination of his or her staff privileges. In Business and Professions Code section 809 et seq.,[2] the Legislature set forth a comprehensive procedure governing adverse action by a hospital against a staff physician. (See generally *Unnamed Physician, supra,* 93 Cal.App.4th 607, 616–618.) This procedure is mandatory for acute care hospitals and must be incorporated into their bylaws. (*Id.* at p. 622; see § 809, subd. (a)(8).)

Most relevant here is section 809.1 et seq., which deals with the right of a physician to a hearing after adverse action has been proposed against him or her. Section 809.1 provides that a physician who is the subject of a "final proposed action" of a peer review body is entitled to written notice of the action. (§ 809.1, subd. (a).) The notice must inform the physician of his or her right to request a hearing on the action. (§ 809.1, subd. (b)(3).) A "peer review body" means a body composed of members of the hospital medical staff. (§ 805, subd. (a)(1)(A).) "Final proposed action" means "the final decision or recommendation of the peer review body after informal investigatory activity or prehearing meetings, if any." (§ 809.1, subd. (a).)

Section 809.3 provides that in a hearing concerning a "final proposed action" the parties shall have certain procedural rights, including the right to call, examine, and cross-examine witnesses and to present and rebut evidence. (§ 809.3, subd. (a)(1)–(5).) Section 809.4 provides that at the conclusion of the hearing the parties have the right to a written decision and to be informed of the procedure for appealing the decision, if one exists. (§ 809.4, subd. (a)(1), (2).)

█ Although section 809.1 et seq. speaks of "a final proposed action of a peer review body" (e.g., § 809.1, subd. (a)), section 809.05, subdivision (c)

---

[2] Further statutory references are to the Business and Professions Code unless otherwise noted.

provides that, if a peer review body fails to take action in response to a direction from the hospital's governing body, the governing body itself can take action against a physician. That provision further states that any such action "shall fully comply with the procedures and rules applicable to peer review proceedings established by Sections 809.1 to 809.6, inclusive." (§ 809.05, subd. (c).) Thus, the procedural rights in section 809.1 et seq. apply whether the adverse action is initiated by a peer review body or by a governing body such as the PVH Board in this case.

### 5. *Compliance with section 809.1 et seq. in this case*

There appears to be no dispute that plaintiff was not afforded a hearing under section 809.1 et seq. prior to the Board's decision to deny his reappointment application, which effectively terminated his staff privileges. Defendants argue, however, that PVH was not required to provide plaintiff with a pretermination hearing. Instead, the posttermination hearing that was made available to him was sufficient.

Defendants acknowledge that section 809.1 et seq. continually refers to a hearing on a "final *proposed* action" (italics added). However, they argue the word "proposed" in this context simply means that the action is subject to being overturned if the physician requests a hearing and prevails at the hearing and on any ensuing appellate review. Under defendants' interpretation, therefore, a "final proposed action" under section 809.1 et seq. takes immediate effect and continues in effect unless and until it is overturned. Thus, the Board was justified in excluding plaintiff from PVH effective June 13, 2002, based on its denial of his application the previous day, without a prior hearing.

We cannot accept defendants' position, for the following reasons. First, "[w]ords used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The ordinary use of the word "proposed" is to refer to an action that has not taken effect yet. In *Public Resources Protection Assn. v. Department of Forestry & Fire Protection* (1994) 7 Cal.4th 111 [27 Cal.Rptr.2d 11, 865 P.2d 728], the Supreme Court considered whether certain timber operations were "proposed timber operations" within the meaning of rule 919.9 of the Forest Practice Rules (Cal. Code Regs., tit. 14, § 919.9) when the rule went into effect. The court concluded that "because timber operations had not in fact substantially begun by March 25, 1991, they were 'proposed timber operations' within the meaning of rule 919.9 . . . ." (*Public Resources Protection Assn.,* at pp. 121–122.)

Similarly, the court in *Concerned Citizens of Calaveras County v. Board of Supervisors* (1985) 166 Cal.App.3d 90 [212 Cal.Rptr. 273] considered the proper interpretation of the requirement of Government Code section 65302, subdivision (a) that a county's general plan designate the "proposed" location of waste disposal facilities. The court stated: "The obvious meaning of the term 'proposed,' is that the general plan indicate the county's *intended* uses for the land rather than actual uses which may or may not be at odds with the county's planning policy and goals." (*Concerned Citizens*, at p. 104.)

In keeping with the ordinary meaning of the word "proposed," it appears the Supreme Court interprets the provisions of section 809.1 et seq., which provide for a hearing on a "final proposed action," to require that a hearing occur before the action takes effect. In *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4 [56 Cal.Rptr.2d 706, 923 P.2d 1], the court said: "A peer review committee may informally investigate a complaint or an incident involving a staff physician. If the committee *proposes to recommend* that the privileges of the physician be restricted or revoked because of the manner in which he or she exercised those privileges, the physician is entitled to written notice of the charges and *may request a formal hearing*. (Bus. & Prof. Code, § 809.1.)" (*Id.* at p. 10, italics added.)

■ Although the discussion in *Arnett v. Dal Cielo* was dicta, the court's apparent interpretation of section 809.1 et seq. as affording a physician the right to a hearing before proposed action is implemented is consistent with the language of those sections. Section 809.1, subdivision (b)(1), for example, provides that notice of a final proposed action shall include a statement that the action "*if adopted*," shall be "taken" and reported pursuant to section 805. (Italics added.) The notice must also include a statement that the physician has the right to request a hearing. (§ 809.1, subd. (b)(3).) Thus, the statute appears to contemplate that a hearing be provided before a proposed action is "adopted" or "taken."

Similarly, section 809.3, subdivision (b)(1) provides that at a hearing concerning a final proposed action, "[t]he peer review body shall have the initial duty to present evidence which supports the *charge or recommended action*." (Italics added.) ■ Again, the implication is that the hearing will take place at the point at which the action is "recommended," before it has been implemented.

■ Finally, as discussed in more detail in part II.E, *post*, section 809.5 authorizes the immediate suspension or restriction of a physician's clinical privileges to avoid "imminent danger to the health of any individual." (§ 809.5, subds. (a), (b).) The physician must be "subsequently provided with the notice and hearing rights set forth in Sections 809.1 to 809.4,

inclusive . . . ." (§ 809.5, subd. (a).) If the Legislature had intended that an ordinary "final proposed action" under sections 809.1 to 809.4 take effect immediately, there would have been no need to provide separately for a procedure for immediate suspension in section 809.5.[3] We must, of course, interpret section 809.1 et seq. so as to harmonize the various provisions therein if possible and to avoid rendering any of those provisions surplusage. (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].)

The only possible indication we have found in section 809.1 et seq. that the Legislature might have considered a posttermination hearing to be appropriate appears in section 809.1, subdivision (c)(1). That provision states that, if a physician requests a hearing on a final proposed action, he or she must be given a written notice setting forth "[t]he reasons for the final proposed action *taken or recommended* . . . ." (§ 809.1, subd. (c)(1), italics added.) The reference to an action "taken" could mean that it is permissible to implement an action before a hearing takes place.

 However, in view of the remaining provisions of section 809.1 et seq., discussed *ante*, which as we have seen appear to contemplate a pretermination hearing, we believe the more likely explanation of the use of the word "taken" in section 809.1, subdivision (c)(1) is that in some cases the hearing may concern a summary suspension imposed pursuant to section 809.5. As seen, that section authorizes an immediate suspension as long as a physician "is *subsequently* provided with the notice and hearing rights set forth in Sections 809.1 to 809.4 . . . ." (§ 809.5, subd. (a), italics added.) Thus, in that specific category of cases, a posttermination hearing is permissible. We do not read section 809.1, subdivision (c)(1) to mean that a posttermination hearing is permissible in the more usual case where there is no immediate suspension. Since as noted *ante* the Board did not purport to proceed under section 809.5, its failure to provide a pretermination hearing cannot be justified based on the reference to action "taken" in section 809.1, subdivision (c)(1).

 For these reasons, we construe section 809.1 et seq. to require that a physician be afforded the right to a hearing before action proposed to be taken against him or her is implemented. Contrary to defendants' view, an action that has already been taken is not a "proposed" action merely because it may be overturned in a subsequent hearing, any more than a judgment rendered by a trial court is a "proposed" judgment merely because it may be

---

[3] We note in passing that there is no indication the Board purported to use the summary suspension procedure set forth in section 809.5 when it terminated plaintiff's staff privileges on June 13, 2002, without a hearing, and defendants do not argue that plaintiff's conduct satisfied the requirements for immediate suspension.

reversed on appeal. PVH's immediate termination of plaintiff's staff privileges on June 13, 2002, without a hearing, therefore failed to comply with section 809.1 et seq.

### 6. *Medical disciplinary cause or reason*

Defendants argue that even assuming section 809.1 et seq. entitles a physician to a pretermination hearing, the present case does not fall within the purview of those sections because their application is limited to instances in which action is taken solely for a "medical disciplinary cause or reason." The procedure set forth in section 809.1 et seq. only applies to final proposed actions "for which a report is required to be filed under Section 805 . . . ." (§ 809.1, subd. (a).) Section 805 requires that a report be filed with the state agency having jurisdiction over a practitioner whose staff privileges are terminated "for a medical disciplinary cause or reason." (§ 805, subd. (b)(2).) "Medical disciplinary cause or reason" means conduct "reasonably likely to be detrimental to patient safety or to the delivery of patient care." (§ 805, subd. (a)(6).)

Defendants assert that plaintiff's disruptive behavior alone justified termination of his staff privileges. Therefore, he was not terminated for a medical disciplinary cause or reason.

The Board clearly thought it was terminating plaintiff for a medical disciplinary cause or reason and that the procedure set forth in section 809.1 et seq. therefore applied. In its letter of termination, the Board advised plaintiff he had the right to a hearing on the termination pursuant to "the California Business and Professions Code," i.e., section 809.1 et seq.

It is equally clear that, notwithstanding their current argument, defendants have taken the position that plaintiff's alleged disruptive behavior not only antagonized coworkers but also was likely to be detrimental to patient care. In fact, in the very section of their brief in which they argue the disruptive behavior was not a "medical disciplinary cause or reason," defendants simultaneously assert that the behavior "directly affected patient care," likely "would have continued to affect patient care," and had to be eliminated "in order to guarantee the quality of care that patients received" so that the Board could discharge its responsibility of "ensuring the quality of care received by patients . . . ."

As stated, conduct that is "reasonably likely to be detrimental to patient safety or to the delivery of patient care" qualifies as a medical disciplinary cause or reason. (§ 805, subd. (a)(6).) Having adopted the position that plaintiff's disruptive behavior affected patient care, defendants cannot now

credibly argue that the behavior provided a basis for termination that was not a medical disciplinary cause or reason and therefore was not subject to section 809.1 et seq.

### 7. *Effect of noncompliance with section 809.1 et seq. on exhaustion requirement*

Having determined that PVH should have afforded plaintiff a hearing before terminating his staff privileges, we consider whether its failure to do so excused plaintiff from pursuing PVH's internal remedies before seeking an injunction. In *Holderby v. Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843 [291 P.2d 463] (*Holderby*), the executive board of a union expelled the plaintiff from the union without following the provisions of the union's constitution, which required that formal charges and a hearing be provided. (*Id.* at p. 845–846.) The constitution also provided that a member could appeal to the general executive board from any action by a local union. (*Id.* at p. 845.) However, the plaintiff did not pursue an appeal before filing a lawsuit to obtain reinstatement and damages for unlawful exclusion.

The Supreme Court concluded the action was barred by the plaintiff's failure to pursue the internal appeal. It stated: "It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused. The violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the courts." (*Holderby*, *supra*, 45 Cal.2d at p. 847.)

Significantly, in *Holderby* only internal rules were violated. The court did not have to consider whether exhaustion should be required in a case where the organization failed to afford the member a right guaranteed by law. Two years after *Holderby*, in *Mooney v. Bartenders Union Local No. 284* (1957) 48 Cal.2d 841 [313 P.2d 857] (*Mooney*), the court considered that question. A union member requested permission to examine the union's financial records, which was refused. The constitution of the union required that a member exhaust internal remedies before resorting to court. The plaintiff failed fully to exhaust those remedies. (*Id.* at p. 843.)

The court held the action, seeking a writ of mandate to permit inspection of the records, was not barred by the lack of exhaustion. It acknowledged that under *Holderby* "[p]rovisions in union constitutions requiring the exhaustion of internal remedies are generally recognized by the courts as binding on the members. [Citations.]" (*Mooney*, *supra*, 48 Cal.2d at p. 843.) It noted, however, that a corporate shareholder had a statutory right to inspect corporate records and that the courts would generally afford the same right to a member of a union: "It would seem clear that a member of an unincorporated labor union is entitled to inspect its financial records." (*Ibid.*)

The *Mooney* court also emphasized the fact that requiring the member to exhaust internal remedies before permitting the inspection "would unduly hamper the member's right and possibly defeat the purpose of the investigation." In contrast, an inspection would not unduly interfere with the union's internal affairs, since it related only to a preliminary matter and not to the merits of the underlying dispute. (*Mooney, supra,* 48 Cal.2d at p. 844.)

Although Justice Carter, concurring in *Mooney,* expressed the view that *Mooney* "in effect overrules the Holderby case" (*Mooney, supra,* 48 Cal.2d at p. 845 (conc. opn. of Carter, J.)), it is not necessary for us to consider that possibility. Even if exhaustion is required under *Holderby* notwithstanding violations of internal rules, under *Mooney* exhaustion is not required where pursuing the internal remedy would in effect deprive the member of a right guaranteed by law independently of the internal rules. That is the situation here. Section 809.1 et seq. affords plaintiff the right to a pretermination hearing. Pursuing the internal remedy offered, a posttermination hearing, would effectively deprive plaintiff of that statutory right.

Moreover, as in *Mooney,* affording plaintiff the relief he seeks in this proceeding would not unduly interfere with PVH's internal affairs. As in *Mooney,* the redress plaintiff seeks at this point, a preliminary injunction, relates to a preliminary matter, his right to a pretermination hearing. He does not seek to have the court decide, at this stage, the underlying issue to be addressed at that hearing, whether PVH had cause to terminate his privileges. Excusing the exhaustion requirement in this context does not undermine the reason for the requirement, as stated by the Supreme Court, i.e., that " 'as a matter of policy . . . the association itself should in the first instance pass on the merits of an individual's application rather than shift this burden to the courts.' " (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 86 [276 Cal.Rptr. 130, 801 P.2d 373].)

Defendants note that in *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115 [272 Cal.Rptr. 273] (*Bollengier*) the court held a physician had to exhaust internal remedies even though he did not receive the right to a formal hearing until after his staff privileges were revoked. (*Id.* at p. 1121.) But *Bollengier* was not decided under section 809.1 et seq. and therefore did not consider whether violation of the pretermination hearing requirement of those sections would excuse the exhaustion requirement. Moreover, the physician in *Bollengier* did not challenge the failure to provide a pretermination hearing. Instead, he objected to alleged procedural defects in the charges against him. (*Bollengier,* at pp. 1121–1122.) He wanted the court to address these defects before he proceeded to an administrative hearing on the charges.

The *Bollengier* court viewed the physician's allegations of procedural defects as a contention that the hospital's bylaws were not followed. (*Bollengier, supra,* 222 Cal.App.3d at p. 1123.) It noted that the bylaws provided for review of the type of procedural defect the physician was asserting. (*Id.* at p. 1126.) Therefore, the case came within the holding in *Holderby* that an organization's violation of its internal rules does not excuse the exhaustion requirement. (*Bollengier,* at p. 1128.) The court did not need to, and did not, address whether providing a hearing only after revocation of privileges would amount to a violation of an *independent* legal right, which would excuse the exhaustion requirement.

The court in *Unnamed Physician, supra,* 93 Cal.App.4th 607, in fact, distinguished *Bollengier* on just that basis. The hospital in *Unnamed Physician* proposed to restrict the privileges of a staff physician. The physician contended the procedures for challenging the proposed action, as set forth in the hospital's bylaws and as implemented in his case, did not comply with the requirements of sections 809 through 809.8 in certain respects. (*Unnamed Physician,* at pp. 617–618.) Although the court ultimately disagreed with that contention, it rejected the proposition that the physician had to exhaust the internal procedures before challenging their adequacy in court: "An essential part of appellant's challenges is that the bylaws, which govern the administrative procedure, do not comport with the statutory minimums. The argument has two components related to seeking extraordinary relief. First, the argument includes an assertion that respondents have a duty to provide a procedural mechanism for peer review which offers the statutory procedural safeguards. Second, that absent compliance with the statutory procedural safeguards, the administrative procedure established by the bylaws does not comport with due process. Under either or both of these, the failure to exhaust administrative remedies, in and of itself, will not bar relief." (*Id.* at pp. 620–621.)

Plaintiff's claim in this case, that PVH's failure to afford him a pretermination hearing did not comply with section 809.1 et seq., is analogous to the claim of the physician in *Unnamed Physician* that the hospital's procedure did not comply with the statutory requirements. Under *Unnamed Physician,* that claim was not subject to the exhaustion requirement.

Defendants also cite *Lujan v. G & G Fire Sprinklers, Inc.* (2001) 532 U.S. 189 [121 S.Ct. 1446, 149 L.Ed.2d 391]. There, the United States Supreme Court held that a public agency's withholding of funds owed to a public works contractor due to a suspected wage law violation was not a violation of due process even though there was no prior hearing, as long as postdeprivation relief in the form of a court action was available. However, the court in *Lujan* based its holding on the fact that the contractor's claim to the money

was not a "present entitlement," which could only be taken away after a hearing. The court contrasted cases in which a present entitlement *was* involved, such as where the claimant was denied the right "to pursue a gainful occupation." (*Id.* at p. 196.)

Here, of course, the right "to pursue a gainful occupation" is exactly what is at stake. As stated, the California Supreme Court has determined that the right to retain staff privileges is a "vested" right that merits protection over and above that afforded to other property interests, such as the interest of an initial applicant in *obtaining* a staff appointment. (*Anton v. San Antonio Community Hosp., supra,* 19 Cal.3d 802, 824–825.) Therefore, the holding in *Lujan* that a property interest that does *not* rise to the level of a "present entitlement" does not merit a predeprivation hearing does nothing to assist defendants.

Moreover, *Lujan* was decided solely on federal due process grounds. It did not involve a statutory scheme such as section 809.1 et seq., which, as we have seen, contemplates a hearing prior to termination of privileges.

For these reasons, we conclude plaintiff was entitled to seek an injunction to secure his statutory right to a pretermination hearing under section 809.1 et seq. without first pursuing PVH's internal remedy, a posttermination hearing. Accordingly, the court's denial of a preliminary injunction cannot be sustained based on the exhaustion requirement.

### C. *Likelihood of Prevailing on Merits*

The second basis on which the court denied an injunction was that it did not appear there was a reasonable likelihood plaintiff would "prevail on the merits of his case . . . ." In evaluating that ruling, we must first determine what prevailing on the merits means in this context. Plaintiff's complaint alleged in part that defendants had failed to provide him with a pretermination hearing as required by section 809.1 and the common law right of fair procedure. He also alleged, however, that defendants' purported reasons for terminating his privileges were without substantive merit. The question thus arises whether, to show a likelihood of prevailing on the merits, plaintiff had to establish a probability that defendants lacked cause to terminate him, or only that they should have provided him with a pretermination hearing.

In *Shoemaker v. County of Los Angeles, supra,* 37 Cal.App.4th 618, a physician challenged his removal from posts at a medical center and university. He obtained a preliminary injunction rescinding the removal and restraining the defendants from removing him unless they provided him with due process and complied with civil service rules. (*Id.* at p. 625.) On appeal,

the court in addressing the factor of likelihood of success on the merits said: "Shoemaker sought the preliminary injunction based on a violation of the *procedural* rights alleged in the first amended complaint. . . . More specifically, Shoemaker argued that he should be reinstated until such time, if any, as defendants accord him the predisciplinary procedural safeguards allegedly mandated by civil service rules and the due process clause. We therefore have no occasion to evaluate Shoemaker's likelihood of success on his substantive claims." (*Id.* at p. 626.)

Here, similarly, plaintiff sought a preliminary injunction based on the violation of his procedural right to a pretermination hearing. Accordingly, as in *Shoemaker* the relevant question is whether plaintiff was likely to prevail on his claim that his procedural rights were violated, not whether he would be able to show defendants lacked cause to terminate his privileges.

We have concluded in part II.B., *ante*, that plaintiff should have been afforded a pretermination hearing. Thus, he adequately established a likelihood of prevailing on the relief he sought at the injunction stage, i.e., the reinstatement of his privileges pending a hearing. The court erred in denying an injunction based on a lack of probability of success on the merits.

### D. *Injunction Against Completed Act*

The remaining ground on which the court denied an injunction was that the denial of plaintiff's reappointment application on June 12, 2002, was a completed act that the court would not overturn where plaintiff could have sought relief prior to that date. Defendants contend the ruling was proper based on the principle that an injunction will not issue to restrain a completed act. They cite *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324 [85 Cal.Rptr.2d 86], in which the court held an injunction was not warranted to restrain the defendant from contacting the plaintiff's employees where the defendant had committed only one act of violence and there was no showing of any threat of future acts. (*Id.* at p. 336.)

The *Scripps* court in turn cited *Gold v. Los Angeles Democratic League* (1975) 49 Cal.App.3d 365 [122 Cal.Rptr. 732], limited on other grounds in *Youst v. Longo* (1987) 43 Cal.3d 64, 74 [233 Cal.Rptr. 294, 729 P.2d 728]. In *Gold*, the court held there was no basis for injunctive relief to restrain the defendants from mailing misleading election pamphlets where the election had occurred a year earlier and there was no allegation the defendants threatened to repeat the mailings. (*Gold*, at pp. 372–373.)

In contrast, injunctive relief has been upheld where the defendant's completed act causes ongoing harm or is part of a continuing course of conduct.

In *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564 [199 Cal.Rptr. 773, 676 P.2d 584], for example, the Supreme Court held it was proper to order the defendant to remove part of a completed structure that interfered with the plaintiffs' easement. The court stated: "Defendant argues that a mandatory injunction may not issue to enjoin a completed act. However, there is extensive authority standing for the proposition that a court of equity may, in a proper case, issue a mandatory injunction for protection and preservation of an easement including, where appropriate, an order for removal of an obstruction already erected." (*Id.* at p. 572.)

In *Volpicelli v. Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal.App.3d 242 [167 Cal.Rptr. 610] (*Volpicelli*), the court upheld an injunction ordering that the plaintiff physician be given notice and a hearing on the termination of his staff membership and that he be reinstated pending the hearing. (*Id.* at p. 246.) The court rejected the defendants' argument that the termination was a "completed act" that could not be undone by injunctive relief granted more than two years after the termination. (*Id.* at p. 250.) It noted that, after the termination, the hospital had refused the plaintiff's requests for reappointment. (*Id.* at p. 251.) This conduct brought the case "within the recognized exception to the rule that injunctive relief is not available to give redress to completed acts—the exception making injunctive relief available where the wrongful acts are repeated." (*Ibid.*)

The significant distinction between *Scripps* and *Gold* on the one hand, and *Warsaw* and *Volpicelli* on the other, is that in *Scripps* and *Gold* the harm the injunction was sought to prevent had already occurred. It could not be undone, and, since there was no indication the conduct causing the harm would recur, there was nothing left to prevent. In *Warsaw* and *Volpicelli*, however, the harm was a continuing interference with the plaintiff's rights, which could be prevented by granting an injunction.

The present case falls within the second category. ▮ The harm plaintiff sought to prevent—his exclusion from the staff without a prior hearing—continued as long as his staff privileges remained terminated. The continuation of the harm could be prevented by reinstating his privileges and ordering a hearing as a prerequisite to any subsequent termination. The court therefore was not justified in denying injunctive relief based on the "completed act" principle.

E. *Relative Harm*

The trial court did not expressly state whether it relied upon the relative harm factor in deciding to deny an injunction. ▮ However, the Supreme Court has stated that "[w]hen a trial court denies an application for a

preliminary injunction, it implicitly determines that the plaintiffs have failed to satisfy either or both of the 'interim harm' and 'likelihood of prevailing on the merits' factors." (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) Thus, where denial of an injunction could have been based on a finding that the interim harm to the plaintiff did not outweigh the harm to the defendant, the denial must be affirmed if such an implied finding did not constitute an abuse of discretion. (*Id.* at p. 289.)

Defendants argue granting an injunction would cause irreparable harm to PVH and the community, because plaintiff is a disruptive physician who has serious quality of care issues concerning his treatment of patients. They cite the report of the ad hoc committee concerning plaintiff's disruptive behavior and the Greeley report, which noted possible problems with some of his surgical cases.

There was conflicting evidence regarding plaintiff's competence and whether his behavior interfered with patient care. As noted, when asked to report on plaintiff's alleged disruptive behavior, the medical executive committee stated it had found no improprieties on plaintiff's part. In contrast, the ad hoc committee reported that nonphysician care providers had stated plaintiff's behavior could potentially endanger the lives of patients.

The Greeley report identified possible problems with some of plaintiff's cases but stopped short of recommending any action against him. The report stated: "In the event Physician # 140 [plaintiff] is able to provide additional factual information which would clarify certain issues, this information should certainly be considered prior to taking any final action concerning the findings and conclusions of this report."

The record does not reflect whether the Board obtained such additional factual information before deciding to terminate plaintiff. The day after the termination, Dr. Judalena, the PVH chief of staff, complained in a letter to Conejo that the report of problems with plaintiff's surgical cases had not been "discussed with [plaintiff] nor was it brought up to any of the medical staff committees to hear his explanations." Dr. Lucero, the chairman of the PVH peer review subcommittee, stated the subcommittee had been reviewing records for two months and had not found "any cause which would support the concern that the Board is voicing regarding the quality of care [plaintiff] provides." Dr. Judalena similarly stated that as of June 19, 2002, there had been "no proof of any gross malpractice prompting denial of [plaintiff's] re-appointment."

If the question before us were whether there was substantial evidence to justify PVH's concerns about plaintiff's competence and ability to work with

others, we would find that there was. The fact that reasonable minds may differ on a given point does not preclude a finding that substantial evidence supports one position or the other. (*Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1158 [81 Cal.Rptr.2d 155].) (We emphasize, however, that because no hearing occurred plaintiff did not have an opportunity to present evidence to rebut that presented by defendants. We express no opinion how the issue of plaintiff's job performance ultimately should be decided.)

For purposes of granting or denying an injunction, however, the question was not whether there were legitimate concerns about plaintiff's performance, but whether those concerns were sufficient to outweigh the harm to plaintiff in terminating his staff privileges. "When the doctrine of relative hardship or balancing conveniences is invoked as a defense to injunctive relief, proof of irreparable injury to defendant is a necessary element of the defense. [Citation.]" (*Volpicelli, supra,* 109 Cal.App.3d 242, 252, fn. omitted.) In weighing the relative harms, a court should consider "such things as the inadequacy of other remedies . . . ." (*Abrams v. St. John's Hospital & Health Center* (1994) 25 Cal.App.4th 628, 636 [30 Cal.Rptr.2d 603].)

Here, PVH had an effective remedy if plaintiff in fact posed a serious risk to patients as defendants contend. As noted *ante,* section 809.5, subdivision (a) authorizes a peer review body to immediately suspend a physician to prevent "imminent danger to the health of any individual . . . ." Subdivision (b) of that section provides that when no person authorized by the peer review body is available, the governing body may suspend privileges for up to two working days while it seeks ratification from the peer review body. The PVH bylaws similarly provided that when a practitioner's conduct required immediate action to protect the life of a patient or prevent injury to a person in the hospital, the staff, the chief executive officer, or the Board could summarily suspend the practitioner.

An analogous situation was presented in *Hackethal v. Loma Linda Community Hosp. Corp.* (1979) 91 Cal.App.3d 59 [153 Cal.Rptr. 783]. In that case, this court held the plaintiff was entitled to a writ of mandate compelling the hospital to reinstate his staff privileges pending a proper hearing. The hospital argued that reinstatement pending a hearing would hamper its ability to protect the public interest. This court rejected the argument, noting that the hospital bylaws provided a mechanism for summary suspension of clinical privileges when necessary in the interest of patient care. (*Id.* at p. 67.)

Here, similarly, PVH had an adequate remedy in section 809.5 and the bylaws to address any serious quality of care issues. Reinstatement of plaintiff subject to PVH's right to seek summary suspension would not have caused irreparable harm to PVH or the community.

In contrast, the hardship to plaintiff if an injunction were denied was significant. PVH's denial of plaintiff's reappointment, without a hearing, left plaintiff effectively unable to practice his profession, notwithstanding the lack of any finding that he posed any immediate danger to patients. As a surgeon, plaintiff needed a hospital venue in which to conduct his practice. The California Supreme Court has stated: " 'It is common knowledge that a physician or surgeon who is not permitted to practice his profession in a hospital is as a practical matter denied the right to fully practice his profession . . . .' " (*Ezekial v. Winkley* (1977) 20 Cal.3d 267, 273–274 [142 Cal.Rptr. 418, 572 P.2d 32].)

Under these circumstances, the court would have been in error had it denied an injunction based on the balance of harm factor. That factor therefore cannot furnish an alternative basis for upholding the court's ruling.

III

CONCLUSION

The limited question before the court in considering whether to grant an injunction was whether plaintiff was entitled to a hearing before his staff privileges were revoked. We have concluded plaintiff was entitled to a pretermination hearing under section 809.1 et seq. The internal remedy available to him, a posttermination hearing, was not an adequate substitute. The remaining bases on which the court denied an injunction were similarly lacking in merit. Accordingly, an injunction should have been granted.

IV

DISPOSITION

The order denying plaintiff's motion for a preliminary injunction is reversed. The trial court is directed to issue a preliminary injunction reinstating plaintiff's staff privileges pending a pretermination hearing, subject to PVH's right to seek a temporary suspension of privileges pending the hearing should it elect to do so. Appellant shall recover costs on appeal.

McKinster, Acting P. J., and Ward, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 18, 2004. Kennard, J., was of the opinion that the petition should be granted.