Filed 6/7/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOHN DOE et al.,<br><br>    Plaintiffs and Appellants,<br><br>      v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent,<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>    Real Party in Interest and Respondent. | B324717<br><br>Los Angeles County<br>Super. Ct. Nos. 22STCP03412, 22STCP03416 & 22STCP03417 |

        APPEAL from an order of the Superior Court of Los Angeles County.  Mitchell L. Beckloff, Judge.  Affirmed.

        Greenberg Glusker Fields Claman & Machtinger, Lisa Von Eschen, Vishwanath Mohan; Appell Shapiro and Scott E. Shapiro for Plaintiffs and Appellants.

Reed Smith, Raymond Cardozo, Corrie Buck, Kathryn M. Bayes; and John Gherini for Defendant and Respondent.

Law Offices of Kelly A. Aviles, Kelly A. Aviles; and Jeff Glasser for Real Party in Interest and Respondent.

_____

## SUMMARY

Plaintiffs appeal from an order denying their request for a preliminary injunction preventing disclosure of certain personnel records in response to a California Public Records Act (CPRA; Gov. Code, § 7920.000 et seq.) request by Los Angeles Times Communications LLC (The Times). We affirm the order denying the preliminary injunction.

## FACTS

Plaintiffs are two former faculty members at the University of California, Los Angeles (UCLA). In January 2018, UCLA received a whistleblower complaint alleging plaintiffs and a third professor (collectively, the professors) had engaged in serious misconduct. The Regents of the University of California (The Regents) retained an outside independent law firm, Hueston Hennigan, LLP (Hueston), to investigate the allegations. The Regents notified plaintiffs of the investigation in September 2019.

On May 4, 2020, Hueston issued a 60-page report (the Hueston report). The report stated Hueston " 'interviewed 44 UCLA administrators, faculty, staff, and current and former students' "; reviewed hundreds of thousands of e-mails and associated documents and " 'numerous financial reports' which were 'analyzed by a professional forensic accountant retained by' Hueston, as well as 'documents provided to' Hueston by" the

three professors; and conducted full-day interviews with each of the professors (and in one case, two full days).

The Hueston report "concluded [the three professors] 'engaged in improper governmental activities under the University of California Policy on Reporting and Investigating Allegations of Suspected Improper Governmental Activities.' " The report also concluded two of the professors " 'violated University policy and California conflict of interest laws' "; one of them retaliated against another faculty member, "constituting 'improper governmental activity,' and violating the 'UC Faculty Code of Conduct' "; and another was found to be "involved in harassing activities." Hueston also concluded the evidence did not substantiate other allegations it investigated.

In June 2020, UCLA submitted a formal charge against one of the professors and issued notices of intent to dismiss the other two from their employment effective July 10, 2020. The latter two are the plaintiffs in this appeal.

All three professors settled their pending disciplinary proceedings with The Regents with no findings of misconduct, no adjudication regarding the Hueston report, and no admissions of liability or unlawful conduct. The professors resigned their employment in connection with their settlements.

In March 2021, Martin Martz, a former UCLA employee, requested the Hueston report under the CPRA. The Regents notified the former professors, who objected to The Regents' intended release of the report. Each of them sought a writ of mandate to compel The Regents to withhold disclosure of the Hueston report. Such lawsuits are known as "reverse-CPRA" actions. (See *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1264-1265 (*Marken*).) The three actions were consolidated.

3

On June 20, 2022, the trial court issued a comprehensive 12-page order denying the three petitions for writ of mandate, allowing The Regents to release the Hueston report (with certain redactions) to Mr. Martz. The court found it was undisputed that disclosure of the report "would compromise substantial privacy interests"; the report found the professors "committed serious misconduct and provides citations to supporting evidence to substantiate the finding"; and the issue was whether the potential harm to the professors' privacy interests outweighed the public interest in disclosure.

The trial court cited authorities to the effect that even without a finding of misconduct, "if the information in the agency's files is reliable and, based on that information, the court can determine the complaint is well founded and substantial, it must be disclosed." (*Marken, supra,* 202 Cal.App.4th at p. 1275.) The court concluded the professors did not meet their burden of establishing the Hueston report was exempt from disclosure.

Among other points, the court observed the professors worked at a public university occupying positions of trust, responsibility and authority; the allegations of misconduct were "unquestionably serious and substantial"; the public "has a strong, legitimate and weighty interest in knowing whether and how the university enforces its rules," especially where professors "have sometimes used staff to assist in their misconduct"; and the report "will inform about important governmental activities—the manner in which this public university addressed whistleblower complaints and claims of student victimization by professors." Further, the court stated it "reviewed the Report in its entirety and determined . . . there is sufficient indicia of reliability to support a reasonable conclusion the complaint and Report are well founded and substantial in nature."

4

Accordingly, the court ordered that The Regents could release the Hueston report to Mr. Martz on or after July 22, 2022.

The former professors all filed notices of appeal of the denial of their petitions.

On July 18, 2022, The Times (which was not a party to the Martz CPRA proceedings) made its own CPRA request. The Times requested investigative materials "related to the whistleblower complaint . . . about international students in the orthodontics section of the dentistry school being asked to pay unauthorized fees or donations." The request included the Hueston report, the subsequent settlement agreements between each of the three professors and the university, and the notices of intent to dismiss plaintiffs.

On August 23, 2022, the former professors petitioned this court for a writ of supersedeas or other appropriate stay, contending their appeals of the denial of their mandate petitions would be rendered futile and moot if the Hueston report were disclosed in response to The Times's request.

On September 19, 2022, this court ordered The Regents not to disclose the Hueston report or any portion of it "to any person or entity" pending resolution of the appeals. The appeals (case No. B321897) are pending, but as of this writing, briefing is far from complete, and those appeals may not be fully briefed and ready to be heard until late this year.

Meanwhile, a few days earlier, on September 15, 2022, the three former professors filed new petitions for writ of mandate in the trial court, seeking to prevent The Regents from disclosing the notices of intent to dismiss (in two instances) and the settlement agreements requested by The Times. The notices of intent to dismiss included "listing in a summary fashion the allegations in the [Hueston] investigation report," with one notice containing an allegation of misconduct not set forth in the other.

5

The settlement agreements did not summarize, but referred to the investigation.

On September 21, 2022, The Regents advised the professors and The Times that, except for the Hueston report (disclosure of which had just been stayed by this court), The Regents intended to disclose the other records to The Times absent a court order precluding them from doing so.

On October 19, 2022, the former professors sought a temporary restraining order (issued two days later) and a preliminary injunction to prevent release of the notices and settlements.

On November 14, 2022, after a hearing, the trial court denied the request for a preliminary injunction. The trial court found plaintiffs had no likelihood of success on the merits, based on its previous determination that the Hueston report was subject to disclosure under the CPRA. "To the extent the documents . . . quote or summarize the investigation report, they are necessarily not exempt from disclosure under the CPRA."

The remaining material in the notices of intent to dismiss was "directly related to the well founded and substantial allegations of misconduct and [UCLA's] response thereto. The analysis (balance of competing interests) concerning disclosure and the privacy interests of [plaintiffs] is identical to that set forth in this court's order of June 20, 2022," and for those reasons plaintiffs had "no likelihood of success on the merits of their reverse-CPRA claim as to the notices of intent to dismiss."

The same analysis applied to the settlement agreements. They did not quote or summarize the Hueston report, but "they reference the investigation. The settlement agreements document how [plaintiffs] resolved [UCLA's] investigation and

6

the potential for discipline imposed by [UCLA]. These documents are directly related to the well founded and substantial allegations of misconduct," and the court's analysis of the settlement agreements would again be identical: "[T]he analysis would raise the same competing considerations—[the professors'] substantial privacy interests and the public's right to know in the context of whistleblowing and student victimization—and the court would balance those considerations in favor of disclosure as it did with the investigation report."

The trial court concluded: "[D]ocuments, not just an investigation report, related to well founded and substantial claims of public employee misconduct are not exempt under Government Code section 6254, subdivision (c).[1] To be sure, the documents sought here by [The Times] are different than the investigation report, but they are directly related to the well founded and substantial claims of misconduct by [the professors]. For that reason, after balancing competing interests, the court finds [the professors'] substantial privacy interests must yield to the public's right to know for purposes of this motion."

The trial court postponed the time for release of the documents to allow the former professors to seek appellate review. Two of them (plaintiffs) filed appeals, as well as a petition for writ of supersedeas. We granted the petition on January 9, 2023, staying the trial court's order. We ordered The Regents not to release or disclose the Hueston report or any documents referring to it, including the notices of intent to

---

[1] Government Code section 6254 is now codified as Government Code section 7927.700, effective January 1, 2022, operative January 1, 2023.

7

dismiss and the settlement agreements, to anyone pending resolution of the appeals or further order of the court.

## DISCUSSION

### 1. Preliminary Injunction Principles

" 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction . . . rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion.' " (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69 (*IT Corp.*).)

Trial courts evaluate "two interrelated factors" in deciding whether to issue a preliminary injunction. (*IT Corp., supra,* 35 Cal.3d at p. 69.) "The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (*Id.* at pp. 69-70.)

"The moving party must prevail on both factors to obtain an injunction. Thus, where the trial court denies an injunction, its ruling should be affirmed if it correctly found the moving party failed to satisfy either of the factors." (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1145; see also *Butt v. State of California* (1992) 4 Cal.4th 668, 678 ["A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim."].)

8

## 2. CPRA Principles

The CPRA is described elsewhere in great detail. (See, e.g., *Marken, supra,* 202 Cal.App.4th at pp. 1261-1262.) Suffice it to say here that the Legislature sought to reconcile "two fundamental, but sometimes conflicting, conditional rights": the individual's right of privacy and the public's right of access to information concerning the public's business. (*Id.* at p. 1261.) Generally, "every person has a right to inspect any public record" (Gov. Code, § 7922.525, subd. (a)), but there are exemptions designed to protect individual privacy. As relevant here, the CPRA "does not require disclosure of personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 7927.700.) These statutory exemptions are narrowly construed, and the exemptions from disclosure in section 7927.700 (formerly § 6254, subd. (c)) "are permissive, not mandatory: They allow nondisclosure but do not prohibit disclosure." (*Marken,* at p. 1262.)

*Marken* also recounts the precedents addressing the standard for weighing "an individual's privacy rights against the public's right to know of an alleged wrongdoing for purposes of" the personnel records exemption. (*Marken, supra,* 202 Cal.App.4th at p. 1272; see *id.* at pp. 1271-1274.) One principle emerging from the precedents is that if a complaint "has been upheld by the agency involved or discipline imposed, even if only a private reproval, it must be disclosed." (*Id.* at p. 1275.) More pertinently here, "even without such a finding, if the information in the agency's files is reliable and, based on that information, the court can determine the complaint is well founded and substantial, it must be disclosed." (*Ibid.*, citing

9

*Bakersfield City School Dist. v. Superior Court* (2004)
118 Cal.App.4th 1041, 1044 (*Bakersfield*).)

**3.     Contentions and Conclusions**

Relying on the principles we have just described, the trial court here found plaintiffs had no likelihood of prevailing on the merits at trial.  The trial court based its finding on its earlier determination that the Hueston report must be disclosed, and its conclusion that the settlement agreements and notices of dismissal were subject to the identical analysis.

We agree with the trial court's analysis, and therefore affirm its order denying the preliminary injunction.  None of plaintiffs' arguments for a contrary result has merit.

Plaintiffs' first contention is that we should decide their other appeal (case No. B321897), concerning disclosure of the Hueston report, first.  They say deciding this appeal first "is likely to cause unwarranted disorder," and "[o]nly portions of the Report are the subject of this appeal," while "the entire Report" is at the heart of the other appeal.

Plaintiffs cite no authorities to support their argument, and we know of none.  This appeal is ready for decision, and the other appeal is not.  The Times is not a party to the other appeal.  We see no reason to delay further a decision on a ruling that concerns the CPRA and the " 'strong public policy supporting transparency in government.' " (*Marken, supra,* 202 Cal.App.4th at p. 1271.) Plaintiffs make no effort to contradict The Times's assertion that the same issues are involved in both appeals and plaintiffs "have a full opportunity to present all relevant facts and law here and,

10

thus, are deprived of nothing if this Court decides the issues here first."[2]

Plaintiffs next contend that denial of a preliminary injunction was an abuse of discretion for two reasons.

Plaintiffs assert the trial court acted "capriciously" by relying on its previous order that the Hueston report must be disclosed to conclude plaintiffs could not prevail in this case. Plaintiffs cite no supporting authority, saying only that the prior order "was already the subject of appeal" and "there was a possibility that the prior order would be reversed." But the trial court's task is to decide based on the facts and law at hand, not to speculate on the "possibility" of reversal based only on the filing of an appeal. Notably, as we discuss below, in this appeal plaintiffs establish no such possibility, much less probability.

Plaintiffs further argue that the supersedeas writ we granted in their previous appeal "mandated" injunctive relief by the trial court in this case, and therefore the trial court acted capriciously when it determined plaintiffs were not entitled to injunctive relief. Again, we note an absence of supporting authority for the proposition that an appellate stay to preserve the status quo in one case "mandates" injunctive relief in another case. The trial court was required to decide the matter before it based on the standards for issuance of a preliminary injunction, and that is what it did. And it is in this appeal from that ruling that we decide whether the trial court properly applied those standards.

And so we turn to the standards for injunctive relief, described at the outset of our discussion.

---

[2]     The Times filed a motion to consolidate the appeals because they concern the same issues of fact and law. The motion was deferred and we now deny it as moot.

We do not take issue with the conclusion that "the balance of interim harm" favors plaintiffs; the trial court so stated, finding "the potential harm for wrongful release of information is more significant than delay to the public in receiving information to which it is entitled." But the principle the trial court applied is the one stated in *Butt v. State of California, supra,* 4 Cal.4th at page 678, quoted above: The trial court "may not grant a preliminary injunction, regardless of the balance of interim harm," unless there is a possibility the plaintiffs will ultimately prevail on the merits of their claim.

Plaintiffs insist there was a likelihood of success on the merits, but their discussion merely describes their privacy interests in the records. They do not cite any authorities that suggest any likelihood of success on the merits, or any flaw in the trial court's analysis. Indeed, plaintiffs fail completely to state or acknowledge the applicable standard for weighing "an individual's privacy rights against the public's right to know of an alleged wrongdoing for purposes of" the personnel records exemption. (*Marken, supra,* 202 Cal.App.4th at p. 1272.) That standard, as already mentioned, is that "where complaints of a public employee's wrongdoing and resulting disciplinary investigation reveal allegations of a substantial nature, as distinct from baseless or trivial, and there is reasonable cause to believe the complaint is well founded, public employee privacy must give way to the public's right to know." (*Bakersfield, supra,* 118 Cal.App.4th at p. 1045.)

Plaintiffs do not address this standard, or any of the cases applying it, either in their opening brief or in their reply. The sole authority they cite is *Associated Chino Teachers v. Chino Valley Unified School Dist.* (2018) 30 Cal.App.5th 530, but they do not explain how it helps them, and it does not. The *Chino Valley* court used the same standard as *Marken* and *Bakersfield*

12

when it found the potential harm to privacy interests outweighed the public's interest in disclosure of allegations of misconduct by a public high school teacher while acting as a girls' volleyball coach. The *Chino Valley* court cited *Marken* and *Bakersfield* and found the complaints against the coach were *not* "of a substantial nature." (*Chino Valley*, at p. 543; see *Bakersfield, supra,* 118 Cal.App.4th at p. 1045.) "[T]hey were limited to [the coach] yelling and belittling the student athletes in public, . . . and holding practice at [the coach's] home. The same complaints could most likely be made and found true of every successful high school athletic coach across the nation. [The coach's] conduct was objectively reasonable." (*Chino Valley*, at p. 543, fn. omitted.)

Plaintiffs then say that the Hueston report's allegations "remain unproven." That point, as the precedents plaintiffs fail to acknowledge tell us, is irrelevant. " '[N]either the imposition of discipline nor a finding that the charge is true is a prerequisite to disclosure . . . .' [Citation.] That is, although there is 'a strong policy for disclosure of true charges' [citation], a court must also order disclosure of records relevant to charges of misconduct that have not been found true by the public agency if the documents 'reveal sufficient indicia of reliability to support a reasonable conclusion that the complaint was well founded' [citation]." (*Marken, supra,* 202 Cal.App.4th at p. 1273.)

Plaintiffs make no effort to show that the misconduct alleged was not of a substantial nature. And it is plain from the record before us that there were "sufficient indicia of reliability" to support a reasonable conclusion the whistleblower complaint and the Hueston report were well founded. The investigation was extensive. We refer the reader to our description of the trial court's order on the Hueston report (at pp. 2-3, 4-5, *ante*). And there was apparently even more information in the trial court's

13

Hueston ruling; many details are redacted from the copy of the order that appears in our record.

In short, we are left with no basis to conclude there was any error in the trial court's reliance on its previous order that the Hueston report must be disclosed, or in the conclusion that necessarily followed concerning the related documents in this case. The settlements and notices of intent to dismiss are subject to the identical, sound analysis. Plaintiffs have not established a possibility they will ultimately prevail in their effort to prevent disclosure and are not entitled to injunctive relief.

## DISPOSITION

The November 14, 2022 order denying plaintiffs' request for a preliminary injunction is affirmed. Notwithstanding any previous order of this court in any related case, this court's January 9, 2023 order in this case prohibiting The Regents from releasing or disclosing the Hueston Hennigan Report or any portion of it, or any documents referencing the report or including any portions thereof, including but not limited to the Personnel Records consisting of the Notices of Intent to Dismiss and the Settlement Agreements pertaining to plaintiffs, shall expire 30 days from the date this opinion is filed. Once that period expires, The Regents shall release the report and other records, unless the California Supreme Court orders otherwise. The Regents and The Times to recover costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:


WILEY, J.        VIRAMONTES, J.


14