Filed 9/19/23

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| KESHARA SHAW et al., | B315814 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. 20STCV36489 |
| LOS ANGELES UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge. Reversed in part, affirmed in part, and remanded with directions.

Kirkland & Ellis, Mark C. Holscher, Sierra Elizabeth, Edward S. Hillenbrand, Robert Carnes, Laura E. Uhlenhuth and Kathryn Panish for Plaintiffs and Appellants.

Dannis Woliver Kelley, Sue Ann Salmon Evans, Ellen C. Wu, Keith A. Yeomans, Luke L. Punnakanta and William Guy Ash for Defendant and Respondent Los Angeles Unified School District.

Bush Gottlieb, Ira L. Gottlieb, Lisa C. Demidovich, Michael E. Plank and Dexter F. Rappleye for Relief Defendant and Respondent United Teachers Los Angeles.

## INTRODUCTION

Plaintiffs and appellants allege that during the COVID-19 pandemic, defendants and respondents Los Angeles Unified School District (LAUSD or the District) and its then Superintendent, Austin Beutner, adopted distance-learning policies that discriminated against poor students and students of color—and deprived all students of basic statewide educational equality—in violation of the California Constitution.[1] Plaintiffs rest their challenge on various side letter contract agreements between LAUSD and the teachers union, defendant and respondent United Teachers Los Angeles (UTLA), which plaintiffs contend implemented the distance-learning framework established by the Legislature in a discriminatory fashion.[2] Since the suit was filed, however, the District has returned to in-person instruction, and both the side letter agreements and the statutory framework that authorized them have expired. Nevertheless, plaintiffs continue to seek injunctive relief to remedy what they contend are ongoing harms caused by the allegedly unconstitutional policies.

---

1    Plaintiffs are Keshara Shaw, Alma Rosa Farias De Solano, Josue Ricardo Gastelum-Campista, Maritza Gonzalez, Ronnie Heard, Jr., Deyanira Hooper, Judith Larson, Vicenta Martinez, and Akela Wroten, Jr., on behalf of themselves and a proposed class of similarly situated people. On our own motion, we take judicial notice that Austin Beutner is no longer Superintendent of LAUSD.

2    Plaintiffs characterize UTLA as a relief defendant, which we understand to mean that they sued it to allow the trial court to afford complete relief.

The trial court sustained, with leave to amend, LAUSD's demurrer on mootness grounds and granted, with leave to amend, its motion to strike the prayer for relief, reasoning that the requested remedies would not be manageable on a class-wide basis. The trial court also sustained, with leave to amend, UTLA's demurrer. Rather than amend, plaintiffs suffered dismissal and now appeal. We conclude the court prematurely struck the prayer for relief at the pleading stage, notwithstanding the end of distance learning. Because the plaintiffs propose a seemingly viable remedy for the past and continuing harms they allege, their constitutional claims are not moot. We therefore reverse in part, affirm in part, and remand with instructions.[3]

## BACKGROUND

### 1. Summary of Distance Learning Framework

On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California due to the COVID-19 pandemic. (*County of Los Angeles Dept. of Public Health v. Superior Court* (2021) 61 Cal.App.5th 478, 484.) Los Angeles Mayor Eric Garcetti declared a local state of emergency the same day.

On March 13, 2020, Governor Newsom signed Executive Order N-26-20 relating to school district operations during the crisis. Every LAUSD campus physically closed starting on March 16, 2020. The following day, the Legislature enacted Senate Bill No. 117, which, among other things, waived attendance and statewide testing requirements for the 2019–

---

3    We affirm the judgment as to former Superintendent Beutner on mootness grounds.

2020 school year for school districts that complied with the Executive Order. (Sen. Bill No. 117 (2019–2020 Reg. Sess.) Stats. 2020, ch. 3.)

LAUSD and UTLA negotiated the impacts and effects of the emergency closures and the shift to distance learning. The resulting agreement, executed on April 8, 2020, was contained in an April 2020 side letter to their collective bargaining agreement. That side letter expired on June 30, 2020.

On June 29, 2020, the Legislature enacted Senate Bill No. 98, which, among other things, established requirements for distance learning during the 2020–2021 school year. (Sen. Bill No. 98 (SB 98) (2019–2020 Reg. Sess.) Stats. 2020, ch. 24, § 34, enacting, e.g., Ed. Code,[4] former §§ 43501 [minimum instructional minutes], 43503 [distance learning requirements], 43504 [documenting attendance and progress], and 43509 [procedures for establishing distance learning policies].)

Section 43501 reduced the minimum required instructional time for a school day. The reduced times varied by grade: 180 minutes for kindergarteners (§ 43501, subd. (a)), 230 minutes for first through third graders (*id*., subd. (b)), and 240 minutes for fourth through 12th graders (*id*., subd. (c)). Section 43503 established the requirements for distance learning, including "[c]ontent aligned to grade level standards that is provided at a level of quality and intellectual challenge substantially equivalent to in-person instruction." (§ 43503, subd. (b)(2).)[5]

---

4    All undesignated statutory references are to the Education Code.

5    Although the minimum instructional time set forth in section 43501 does not appear to distinguish between

4

Section 43504 required school districts to document daily student participation and engagement. (§ 43504, subd. (d)(1); see *id.*, subd. (e) ["Each local educational agency shall ensure that a weekly engagement record is completed for each pupil documenting synchronous or asynchronous instruction for each whole or partial day of distance learning, verifying daily participation, and tracking assignments."].) It also laid out requirements for tracking and mitigating absenteeism. (*Id.*, subd. (f).) The distance learning provisions went into effect on June 29, 2020. (Stats. 2020, ch. 24, § 124.)

LAUSD and UTLA negotiated the impacts and effects of this new regimen. Their agreement governing the fall 2020 semester was contained in an August 2020 side letter, which expired on December 31, 2020. LAUSD and UTLA then negotiated a December 2020 side letter to govern the spring 2021 semester.

On May 25, 2021, the LAUSD board terminated the superintendent's emergency authority to take actions necessary to respond to the pandemic. Governor Newsom terminated his own executive orders on June 15, 2021. Finally, on June 30, 2021, the state laws authorizing and delineating the contours of distance learning, including section 43503, expired. (Stats. 2020, ch. 24, § 34, enacting former § 43511, subd. (b) ["This part shall

---

synchronous and asynchronous instructional time, section 43503 required daily live interaction between students and teachers. (Former § 43503, subd. (b)(6).) Synchronous instruction occurs when the teacher provides direct instruction; asynchronous instruction occurs when students work independently on assigned work or receive instruction via means other than direct instruction from a teacher, such as by watching a video.

become inoperative on June 30, 2021, and, as of January 1, 2022, is repealed."].) The December 2020 side letter expired the same day.

## 2. Proceedings Below

### 2.1. First Amended Complaint

Plaintiffs filed their original class action complaint on September 24, 2020. On October 7, 2020, they filed a first amended complaint, which added UTLA as a relief defendant.[6]

On April 9, 2021, the trial court overruled LAUSD's demurrer to the first amended complaint but granted LAUSD's motion to strike language concerning the failure to provide students with special education instruction and services. The court held that the case was not moot because school closures were ongoing and could recur, thereby perpetuating the alleged side-letter problems, and section 43503 had not yet expired. It also observed that the complaint had requested only prospective relief; the court thus invited plaintiffs to revise it to include a prayer for remedial (or "retrospective") relief. The court warned, however, that "retrospective relief on a class-wide basis may create commonality and typicality problems because each student's educational shortfalls may be highly individualized."

### 2.2. Second Amended Complaint

Plaintiffs filed the operative second amended class action complaint on May 12, 2021. It asserted eight causes of action:

---

6    They did so because LAUSD had taken the position that UTLA is an indispensable party because it was a party to the challenged side letters—but plaintiffs stated that they were "not bringing any claims against the UTLA."

wealth discrimination, in violation of the equal protection clauses of the California Constitution (first cause of action); racial discrimination, in violation of the equal protection clauses of the California Constitution (second cause of action); violation of the privileges and immunities clause of the California Constitution (third cause of action); violation of article IX, sections 1 and 5 of the California Constitution (fourth cause of action); violation of Government Code section 11135 (fifth cause of action); violation of section 43503 (sixth cause of action); declaratory relief (seventh cause of action); and failure to provide basic educational equality, in violation of the equal protection clauses of the California Constitution (eighth cause of action).[7] The first, second, and eighth causes of action asserted that the constitutional violations stemmed from the April, August, and December 2020 side letter agreements between LAUSD and UTLA, which implemented statutory distance learning policies in the District.

Plaintiffs' second amended complaint also sought remedial injunctive relief. The prayer for relief requested, in part: "Retrospective relief to address the ongoing, cumulative, and irreparable harms already suffered by LAUSD students, including but not limited to non-individualized forms of relief such as (1) additional live instructional minutes delivered by certified teachers, (2) mandatory assessments to evaluate student learning loss, (3) the provision of small group and one-on-one tutoring services to subclasses of students disproportionately impacted by the LAUSD's distance learning policies,

---

[7]     Only the first, second, and eighth causes of action are at issue in this appeal. We refer to them collectively as the "constitutional claims" or "constitutional causes of action."

7

(4) mandatory training for teachers specific to remediating learning loss that students suffered as a result of the LAUSD's distance learning policies, and (5) affirmative outreach measures to counter the student truancy trends that developed as a result of the LAUSD's distance learning policies."

### 2.3.  Demurrers and Motions to Strike

LAUSD demurred to all of the causes of action on mootness grounds. The District asserted that each cause of action failed to state a claim because: the challenged side letters, SB 98, and section 43503 had all expired (see former § 43511, subd. (b)); intervening events rendered the present controversy unlikely to recur; and plaintiffs' constitutional and discrimination claims and the statewide standard on which they rested were dependent upon an expired law.[8]

Separately, LAUSD also moved to strike the language concerning retrospective injunctive relief, arguing that such relief was improper as a matter of law and could not be maintained on a class-wide basis.

UTLA demurred to and moved to strike the class allegations in the second amended complaint on the ground that plaintiffs could not establish a well-defined community of interest among class members. It also joined LAUSD's demurrer on mootness grounds.

---

8      LAUSD also filed a request for judicial notice of various documents concerning post-pandemic return to learning and mitigation policies, which the court granted as to their existence but not as to the truth of any reasonably disputable matters therein.

### 2.4.  Trial Court's Ruling

The trial court sustained both demurrers with leave to amend and granted the motion to strike with leave to amend. The court also struck the class allegations regarding retrospective relief with leave to amend.

The court held that changes in circumstance—namely, the expiration of SB 98 and the operative side letters, the return to in-person instruction, and LAUSD's adoption of post-pandemic remedial policies—rendered plaintiffs' claims moot, and the issues raised were not likely to recur. In light of its conclusion that distance learning was unlikely to resume, at least in its past form, the court rejected plaintiffs' argument that the matter remained relevant to the general public interest. As to plaintiffs' constitutional claims, the court held that because SB 98 and section 43503 had expired, plaintiffs could not establish the required "prevailing statewide standards" element of their claims. As such, they could no longer state facts sufficient to constitute a viable cause of action.[9]

Finally, the court held that even if the expiration of the side letters and section 43503 did not moot plaintiffs' claims, their request for remedial injunctive relief would not be manageable on a class-wide basis because it would require

---

9      As discussed below, when addressing the constitutional claims, the court did not distinguish the eighth cause of action, which required plaintiffs to prove that that "the actual quality of the district's program, viewed as a whole, falls fundamentally below prevailing statewide standards" (*Butt v. State of California* (1992) 4 Cal.4th 668, 686–687 (*Butt*)), from the first and second causes of action, which appellants contend do not share this requirement.

individualized inquiries into which students required what interventions. The court rejected plaintiffs' assertion that they sought only non-individualized relief. Accordingly, the court sustained UTLA's demurrer with leave to amend, granted LAUSD's motion to strike the prayer for relief with leave to amend, and struck the class allegations regarding retrospective relief with leave to amend.

Ultimately, although the court had granted plaintiffs leave to amend to cure the defects it perceived in the second amended complaint, they declined to do so. The case was dismissed with prejudice on September 15, 2021. Appellants filed a timely notice of appeal.

## CONTENTIONS

On appeal, appellants challenge only the dismissal of their constitutional claims—the first, second, and eighth causes of action—and the striking of their prayer for remedial injunctive relief. They concede that the court properly dismissed the third, fourth, fifth, sixth, and seventh causes of action.

Specifically, appellants contend the trial court erred by sustaining the demurrers because the second amended complaint alleged facts sufficient to state claims for race-, wealth-, and inter-district discrimination. Next, they argue that the court erred by striking the request for remedial class-wide injunctive relief. They contend the court misconstrued the relief sought as individualized rather than systemic and argue that it is improper to strike class allegations at the demurrer stage. Finally, appellants argue that the complex civil court's supposed unwritten automatic-stay rule is invalid and unlawfully prevented them from obtaining preliminary injunctive relief.

10

LAUSD contends the judgment of dismissal must be affirmed because appellants do not challenge the trial court's mootness ruling on appeal. On the merits, it argues that the first and second causes of action failed to state a claim because appellants did not establish causation—namely, that it was the District's distance-learning policies that caused discrimination—and the eighth cause of action failed to state a claim because appellants did not provide sufficient evidence of educational quality elsewhere in the state. As to the prayer for class-wide relief, in addition to contesting appellants' arguments, respondents contend the court properly struck the allegations because injunctions may not operate retrospectively, and the requested relief violates the separation of powers doctrine. Finally, concerning the asserted automatic-stay rule, respondents argue that appellants have forfeited the claim by failing to challenge the rule below, and, in any event, any delay was caused not by court policy but by appellants' own actions and strategic choices.

In addition to the issues asserted by LAUSD, UTLA contends that the entire appeal of the rulings it obtained below has been forfeited because appellants do not clearly challenge the court's ruling sustaining UTLA's demurrer. It also argues that even if changed circumstances do not moot the entire case, UTLA should be dismissed because the expiration of the side letters extinguishes the reason for its presence.

## DISCUSSION

### 1. Standard of Review

When, as here, a demurrer to a complaint is sustained with leave to amend and the plaintiffs elect not to amend the

11

complaint, the plaintiffs may test the validity of the order sustaining the demurrer by appealing from the ensuing judgment of dismissal. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 [when a plaintiff chooses to stand on his or her pleading and not amend after a demurrer is sustained with leave to amend, "an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.] On the other hand, where the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived."].)

In reviewing a demurrer order, we independently evaluate the challenged pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5–6 (*Milligan*).) We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the accuracy of contentions, deductions, or conclusions of law. (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

Typically, the failure to amend a complaint constitutes an admission that the plaintiffs have stated the case as strongly as they could have, and no additional facts could be alleged to cure the defect. (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 244.) Thus, on appeal, we treat failure to amend as a waiver of un-pled allegations. (See *Estate of Pryor* (2009) 177 Cal.App.4th 1466, 1470.) We determine de novo whether the factual allegations of the challenged pleading adequately state a cause of action under any legal theory. (*Milligan, supra*, 120 Cal.App.4th at p. 6.)

12

The plaintiffs bear the burden of demonstrating that the trial court erroneously sustained the demurrer. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1485.) We will affirm the judgment if proper on any grounds stated in the demurrer, whether or not the trial court acted on that ground. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

It is the parties' responsibility to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.) When they do not furnish legal argument with citation to authority on a particular point, we may treat the point as forfeited and pass it without consideration. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) In addition, citing cases without any discussion of their application to the present case results in forfeiture. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482–483.) We are not required to examine undeveloped claims or to supply arguments for the litigants. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984–985; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 [it is not the court's function to serve as the appellant's backup counsel].)

Moreover, we do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.) This rule is based on considerations of fairness—withholding a point until the closing brief deprives the

13

opposing party of the opportunity to file a written response unless supplemental briefing is ordered. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

## 2. Forfeiture

Appellants contend the court erred by sustaining the demurrers to their constitutional claims—the first, second, and eighth causes of action. The first cause of action asserted that the side letter agreements discriminated on the basis of wealth; the second cause of action asserted that the side letter agreements discriminated on the basis of race; and the eighth cause of action asserted that the side letter agreements denied LAUSD students an education basically equivalent to that provided elsewhere in the state.

LAUSD argues that appellants have failed to challenge the court's holding that the constitutional causes of action are moot, and as such, have forfeited the appellate claim that the court erred by sustaining the demurrers. Likewise, UTLA argues that appellants concede by abandonment that the bulk of their case has become moot. UTLA also contends appellants' appeal is forfeited in its entirety because it does not clearly encompass UTLA's demurrer.

Appellants respond that LAUSD did not demur to the constitutional claims on mootness grounds, and the court did not sustain the demurrer on that basis. They also contend they have adequately challenged the issues raised in UTLA's demurrer.

As discussed below, we conclude that although appellants' briefs are not a model of clarity, they have preserved their challenges to both demurrers.

14

### 2.1. Appellants adequately address the court's mootness ruling.

LAUSD demurred to each cause of action in the second amended complaint—including the constitutional claims at issue here—on mootness grounds. By sustaining LAUSD's demurrer, the trial court necessarily held that all three constitutional causes of action were moot. Although the court devoted scant attention to that question in its order, appellants were nonetheless required to challenge the ruling on appeal. (See *E.L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2 ["'[I]t is the validity of the court's *action*, and not of the *reason* for its action, which is reviewable.'" (Original italics.)].) Certainly, appellants have not addressed the issue head-on.

Nevertheless, the question of mootness in this case is fundamentally entwined with the question of remedy. We conclude appellants' discussion of the latter question is sufficient to preserve a challenge to the former. As we will explain, if the trial court erred in striking the prayer for relief, appellants still have a viable remedy for past and continuing harms, and their constitutional claims are not moot.

### 2.1.1. The court impliedly held that striking the prayer for relief rendered the constitutional claims moot. [10]

Appellants contend LAUSD did *not* demur—and the trial court did not sustain the demurrer—to the constitutional causes

---

10    We address mootness in detail in section 5, *post*. In general, however, a "case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of

15

of action on mootness grounds; instead, they argue, those causes of action were stricken when the court granted LAUSD's motion to strike. Appellants insist: "LAUSD did not seek dismissal of Appellants' request for remedial injunctive relief on mootness grounds. Nor would doing so have made any sense, as the requested programmatic reforms undoubtedly would have a 'practical impact' and offer 'effectual relief' if ordered by the trial court." Appellants also offer a convoluted theory that the court treated their prayer for remedial relief as its own free-standing claim, suggesting that "the trial court cabined its ruling on Appellants' request (or 'claims') for remedial injunctive relief to the arguments raised in LAUSD's motion to strike, and did not find that the request was moot."[11] (But see, e.g., *Shell Oil Co. v.*

_____

life 'because of events occurring after the judicial process was initiated.' [Citation] . . . The pivotal question in determining if a case is moot is . . . whether the court can grant the plaintiff any effectual relief." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.)

11      Appellants argue: "While a defendant usually demurs to an entire 'cause of action,' LAUSD instead addressed its demurrer to two forms of relief—prospective injunctive relief and declaratory relief. It attacked a third form of relief—remedial (or retrospective) injunctive relief—by way of a separate motion to strike class allegations pertaining to that remedy. Appellants and the trial court accepted LAUSD's framework, and the trial court (1) dismissed Appellants' 'claims' for prospective injunctive relief and declaratory relief as moot, and (2) struck their 'claims' for remedial injunctive relief as not susceptible to class treatment. LAUSD, and thereafter Appellants and the trial court, elected to treat each of Appellants' demanded remedies as essentially separate 'causes of action' or 'claims.' Having prompted that framework in the trial court, LAUSD should not be permitted to

16

*Richter* (1942) 52 Cal.App.2d 164, 168 [relief by injunction is a remedy and not, in itself, a cause of action; cause of action must exist before injunctive relief can be granted].)

The District asserts that it has always argued the constitutional causes of action were moot, but it *also* argued that, to the extent remedial injunctive relief could provide a practical impact that would render those claims non-moot, such relief would be improper for the reasons addressed in the motion to strike.

Both sides overstate the case.

LAUSD overstates the argument it made in its demurrer. To state a claim for denial of basic educational equality, the plaintiff must show that "the actual quality of the district's program, viewed as a whole, falls fundamentally below prevailing statewide standards." (*Butt, supra,* 4 Cal.4th at pp. 686–687.) LAUSD argued that the repeal of SB 98 and section 43503 deprived plaintiffs of a prevailing statewide standard by which to measure the District's distance-learning policies. The District also mentioned, in a footnote in its reply brief: "To the extent Plaintiffs argue that a decision in Plaintiffs' favor can have a 'practical' impact, any such relief would come in the form of what Plaintiffs allege is remedial or retrospective relief, which is subject to LAUSD's concurrently-filed Motion to Strike." Plainly, the District did not address practical impact in any substantive way.

---

now argue that Appellants were required to challenge the trial court's mootness decision in order for their request (or 'claims') for remedial injunctive relief to survive dismissal."

17

But appellants are wrong that "the trial court's mootness analysis addressed only Appellants' requests for prospective injunctive relief and declaratory relief." Although the court did not explicitly address the practical-impact question, it *did* address the statewide standards issue. The court observed: "Plaintiffs also contend that SB 98's expiration does not moot their constitutional claims." The court noted that in overruling LAUSD's demurrer to the first amended complaint, it had relied on appellants' "allegations that prevailing statewide standards for distance learning could be determined from LAUSD's policies before the pandemic, SB 98's requirements, and the policies implemented by the four next largest public school districts in California . . . ."

In ruling on the motions attacking the second amended complaint, however, the trial court said, "Now that SB 98 and Section 43503 are no longer operative, [the] 'prevailing statewide standards' cannot be established based only on LAUSD's pre-pandemic policies and the policies implemented by the four next largest public school districts in California. Policies from only five California school districts—no matter how large they are—are insufficient to establish 'prevailing statewide standards,' absent a statewide statutory baseline such as Section 43503."

In other words, the trial court held that because section 43503 and the side letter agreements were no longer operative, appellants' claims based on them—*including* their constitutional claims—were no longer justiciable.

To be sure, this section of the court's order was brief in comparison to the court's thorough discussion of other issues. In particular, the court did not distinguish the eighth cause of action, which requires plaintiffs to establish prevailing statewide

18

standards, from the first and second causes of action, which do not share this requirement. (See *Butt*, *supra*, 4 Cal.4th at p. 691 ["nothing in our analysis is intended to immunize local school officials for accountability for mismanagement"].) Nor did the trial court explicitly address the question of whether it could grant effective relief.

But the latter issue was plainly on the court's mind. For example, at oral argument, the court asked: "Defendants, I would like you to address the mootness argument but then also address the court's comment . . . concerning even if mootness is aside [*sic*], what about the constitutional violations and the [disparate] impact of the policies on Black and Latino students independent of your letters? In other words, right now we're stuck with children that have fallen behind. Going forward, they're going to ask you for certain types of relief. Why can't that just be an independent basis to allow them to continue?"

Counsel for LAUSD responded "they don't even get to relief . . . until they state a viable cause of action," which "is now moot." The trial court then pressed: "You're saying you have money now going forward, but are they addressing the past problems that were caused by distance learning? You're just saying we're not going to do it anymore in the future. Okay, that's great. But how do you remedy the past deficiency? Can't the court declare enough to get a program—not necessarily for each student—but programs to [be] put in place to remedy . . . those situations, those problems?"

UTLA suggests what ultimately happened is that the trial court "struck the request for classwide retrospective remedies from the [second amended complaint], with the result that no part of the case remained that was not moot." We agree that this

19

is the only reasonable interpretation of the court's order and the proceedings below. It appears the court recognized plaintiffs' proposed remedy would provide a practical impact, which would normally mean the constitutional claims would remain viable. But the court's holding that the requested relief could not proceed on a class-wide basis negated that practical impact, thereby mooting the claims.[12]

The question before us, then, is whether appellants have adequately challenged the court's implied holding. We conclude that they have.

### 2.1.2. Mootness and remedy are intertwined.

As we address in detail below, if appellants can assert a viable remedy, their constitutional causes of action are not moot. Yet on appeal, after challenging the trial court's order granting the motion to strike, appellants do not argue—at least, not explicitly—that because the court erred by striking the prayer for relief, it also erred by impliedly holding that the constitutional claims were moot because they could have no practical impact.

Nevertheless, if the central issue in this case is whether the court erred by striking appellants' prayer for relief, mootness

---

12    Although the court also held that the constitutional claims were moot because the expiration of SB 98 deprived appellants of a prevailing statewide standard for the eighth cause of action, that discussion was relatively brief in the context of the order as a whole. More importantly, the discussion did not apply to the claims of intra-district discrimination asserted in the first and second causes of action because those causes of action do not require plaintiffs to establish a statewide standard. Thus, the court must have had some other basis for sustaining the demurrer to those two causes of action.

merely addresses the legal effect of the answer to that question. In other words, relief and mootness are two sides of the same coin. By arguing in detail and at length that the court erred by striking their prayer for relief, appellants have thereby preserved their claim that their constitutional causes of action remain viable.

In any event, even if appellants' discussion of mootness were insufficient to preserve the issue for appeal, we would exercise our discretion to consider whether appellants can state a claim. Because appellants raised the issue below and address the substance of the trial court's discussion of this matter on appeal, and in light of the important constitutional issues at stake in this case, we conclude rigid application of the forfeiture doctrine would not serve the interests of justice. (See *Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 321 [appellate courts have discretion to consider arguments asserted in the trial court and not reasserted in an opening brief on appeal]; *Scott v. City of San Diego* (2019) 38 Cal.App.5th 228, 234, fn. 4 [exercising discretion to consider merits of argument not raised in opening brief that presented pure legal issue and was material to disposition of appeal].)

### 2.2.  Appellants adequately address UTLA's demurrer.

UTLA contends that appellants have forfeited the entire appeal as to UTLA because they do not clearly challenge the court's ruling sustaining UTLA's demurrer. We disagree. Although appellants do not explicitly parse the differences between the two demurrers, UTLA's demurrer covered the same essential ground as LAUSD's motion to strike—namely, the validity of the prayer for class-wide remedial injunctive relief—and appellants devote ample attention to that topic.

In any event, UTLA does not explain why appellants' discussion of the class allegations is insufficient to encompass the issues raised by UTLA's demurrer. Nor does UTLA explain how its demurrer differs from LAUSD's motion to strike. Accordingly, it has forfeited this argument. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop claim with reasoned legal argument and supporting authority forfeits the issue].)

3.     **The court erred by striking the prayer for relief at the pleading stage.**

Appellants contend the trial court erred by striking their class-wide prayer for remedial injunctive relief. They argue the court misconstrued the relief sought as individualized rather than systemic and argue that it is improper to strike class allegations at the pleading stage. LAUSD argues the court properly struck the prayer for relief because crafting such relief would require myriad individualized inquiries. UTLA argues the court properly struck the prayer for relief because there is no community of interest within the proposed class.

Class allegations may be stricken at the pleading stage only when it is clear from the face of the complaint, the exhibits, and judicially-noticed documents that *liability* isn't subject to common proof. Here, the court held that *relief* was not subject to common proof. This ruling was premature.

3.1.   **Legal Principles and Standard of Review**

"Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. [Citations.] "'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the

22

class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress. . . .'" [Citation.] Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.] But because group action also has the potential to create injustice, trial courts are required to "'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.'" [Citations.]

"Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citations.] The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434–435.)

"The decision whether a case is suitable to proceed as a class action ordinarily is made on a motion for class certification." (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041.) When the invalidity of the class allegations is revealed on the face of the complaint, the trial court may decide the issue by demurrer or motion to strike. (*Ortega v. Topa Ins. Co.* (2012) 206 Cal.App.4th 463, 478.) But California courts have long disfavored

23

disposing of class allegations at the pleading stage. (*Gutierrez v. California Commerce Club, Inc.* (2010) 187 Cal.App.4th 969, 976 (*Gutierrez*).)

Accordingly, a court may decide the question on demurrer only if it is clear ""there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact."" (*Gutierrez, supra,* 187 Cal.App.4th at p. 975; see *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 211 (*Tucker*) [court may sustain a demurrer as to class claims "only if it concludes as a matter of law that, assuming the truth of the factual allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied"].)

"'If there is a reasonable possibility the plaintiffs can plead a prima facie community of interest among class members, ""the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation."""" (*Tucker, supra,* 208 Cal.App.4th at p. 215, citing *Gutierrez, supra,* 187 Cal.App.4th at p. 975.) Thus, "'all that is normally required for a complaint to survive demurrers to the propriety of class litigation is that the complaint allege facts that tend to show: (1) an ascertainable class of plaintiffs, and (2) questions of law and fact which are common to the class." (*Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1326 (*Prince*); see *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59 (*Blakemore*) ["Absent 'strong factual showings' in the complaint that negate the possibility of a community of interest, determination of the propriety of a class

24

action should be deferred 'until a time when [the court] may better make the decision.'"].)

"A motion to strike, like a demurrer, challenges the legal sufficiency of the complaint's allegations, which are assumed to be true." (*Blakemore, supra*, 129 Cal.App.4th at p. 53.) Thus, as with a demurrer, a "motion to strike the class allegations 'raises only the narrow issue whether this suit as a matter of law lacks sufficient community of interest to sustain a class action.'" (*Id.* at p. 54.) We review matters of law de novo. (*Ibid.*)

### 3.2. The court erred by striking the class allegations based on individualized questions of remedy.

The issue before the trial court was: "Considering the allegations of the [complaint], the pleading exhibits, and the judicially noticed facts, have Plaintiffs pled a prima facie community of interest among class members?" (*Tucker, supra*, 208 Cal.App.4th at p. 220.) The court concluded they had: "Plaintiffs correctly state that the legality of the challenged Side Letters is a liability issue susceptible to common proof." The court seemingly reached this conclusion in passing, apparently believing it was self-evident; it did not address the elements of the constitutional claims nor discuss what would be needed to prove them.

Nevertheless, as there was no question the proposed class is ascertainable, this should have been the end of the inquiry. (*Blakemore, supra*, 129 Cal.App.4th at p. 59; *Prince, supra*, 118 Cal.App.4th at p. 1326.) Instead, the court expounded that "even if Plaintiffs could establish commonality as to this liability issue, this case would remain unmanageable because of the highly individualized determinations required to determine damages

25

and to fashion appropriate relief." That is, the court focused not on liability but on remedy.[13]

Both respondents and the court below cite a variety of cases in which individual issues predominated as to both liability *and* remedy.[14] For example, *Silva v. Block* involved a proposed class of people wrongly and unjustifiably attacked by police dogs used by a sheriff's department. (*Silva v. Block* (1996) 49 Cal.App.4th 345, 352.) The appellate court held that the question of liability to individual class members "would depend upon the particular conduct in which the suspect was engaged and the facts apparent to the handler before the police dog was employed." (*Ibid.*; see also *Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1099, 1103 [proposed class of people wrongfully denied policy benefits for damage caused to their

---

13      It appears the court may have also applied the wrong legal standard in resolving the question. A court may not strike class allegations at the pleading stage if "'there is a reasonable possibility the plaintiffs can plead a prima facie community of interest among class members . . . .'" (*Tucker*, *supra*, 208 Cal.App.4th at p. 215.) Here, the court held that "[b]ecause Plaintiffs' request for retroactive injunctive relief will make class treatment unmanageable, a class action is not a superior means of resolving this dispute."

14      The trial court also relied on a variety of federal district court cases, at least one of which is unpublished, as well as an opinion from the Seventh Circuit Court of Appeals. As those opinions are not binding on this court, we do not address them. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456.) For the same reason, we deny UTLA's request, made in its respondent's brief, that we take judicial notice of various federal cases dealing with the pandemic and its effects.

homes by the Northridge earthquake; even if insurers adopted improper claims practices to adjust earthquake claims, each class member "still could recover for breach of contract and bad faith *only* by proving his or her individual claim was wrongfully denied, in whole or in part, and the insurer's action in doing so was unreasonable"] (original italics); *Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 989–990 [proposed class of people allegedly injured by hospital's failure to provide adequate coronary care; case presented "a veritable quagmire of tough factual questions" that could only be resolved by individual proof, as opposed to a "relatively simple consumer fraud action"].)

Similarly, in *Clausing v. San Francisco Unified School District*, the proposed class was disabled students who had allegedly been abused, beaten, and publicly humiliated by school district employees. (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1233–1234.) To establish liability, the appellate court noted, each individual would have had to prove "overwhelmingly numerous" separate issues, including the fact that he or she was a victim of abuse, the identity of the abuser, and the capacity in which the abuser acted. (*Ibid*.) Even if it could be determined that the district's policies and practices encouraged abuse of students, "this determination could not resolve the lawsuit, which would still require a full trial on each and every alleged incident of abuse with respect to fault, causation, damages, and affirmative defenses." (*Ibid*.)

Yet neither the court below nor the parties on appeal have pointed to any California authority in which a court properly struck class allegations at the demurrer stage based only on the

27

supposed unavailability of a class-wide remedy—and our research has revealed none. Indeed, in *Tucker*, which LAUSD holds up as an example of a "modern" case that takes a permissive view of striking class allegations at the pleading stage, the appellate court held that questions about damages were irrelevant to its analysis. (*Tucker, supra*, 208 Cal.App.4th p. 230 ["Regardless of whether Plaintiffs are able to pursue claims for individual damages or class restitution, the adequacy of Defendants' disclosures of the contested billing practice, and whether at least some members of the public are likely to be deceived are not issues that can be resolved as a matter of law on demurrer, even with the matter judicially noticed."].)

In any event, it appears to be within the realm of probability that the trial court—with the assistance of the parties—could fashion appropriate injunctive relief consisting of workable programs and techniques for evaluating and remediating any learning deficits occasioned by the District's distance learning program. School districts across the country are developing programs to identify and remediate pandemic learning loss, so it is not as if the court will have no models to consider. And it is far from obvious at this point that all possible remedies would necessitate prohibitively cumbersome individual inquiries.

Accordingly, we conclude the court erred by striking the class allegations based on concerns about the supposed individualized nature of all possible remedies.

### 3.3. There is a reasonable possibility that appellants can establish a community of interest among class members.

As discussed above, a court may sustain a demurrer to class claims only if it concludes as a matter of law that, assuming the truth of the factual allegations in the complaint, plaintiffs are unable to make a prima facie showing that a community of interest exists among the proposed class members.[15] (*Tucker*, *supra*, 208 Cal.App.4th at pp. 211, 220.) UTLA contends appellants cannot make that showing here. We disagree.

"Since its admission to the Union, California has assumed specific responsibility for a statewide public education system open on equal terms to all. The Constitution of 1849 directed the Legislature to 'provide for a system of common schools, by which a school shall be kept up and supported in each district . . . .' (Cal. Const. of 1849, art. IX, § 3.) That constitutional command, with the additional proviso that the school maintained by each district be 'free,' has persisted to the present day. (Cal. Const., art. IX, § 5.)" (*Butt*, *supra*, 4 Cal.4th at p. 680.)

Courts have interpreted these provisions, together with our state equal protection clauses, to guarantee California children "a fundamental right of equal access to public education, warranting strict scrutiny of legislative and executive action that is alleged to infringe on that right." (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1465.) Students are entitled to educational equality both within school districts (meaning a given district cannot discriminate against them based on their race or their wealth) and between districts (meaning school districts must

---

15    Ascertainability is not at issue here.

29

provide an education at least basically equivalent to that afforded students statewide). Here, appellants allege LAUSD's policies discriminated against them in both of these ways.

### 3.3.1. Intra-District Discrimination

To state a claim for intra-district race or wealth discrimination in education, as asserted in the first and second causes of action, plaintiffs must allege that "a policy adopted in California has a substantial disparate impact on the minority children of its schools . . . and no action is taken to correct that policy when its impacts are identified." (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 896–897; see *Vergara v. State of California* (2016) 246 Cal.App.4th 619, 648 [race is a "'suspect classification'" under equal protection analysis; in "the context of education, under California law, wealth is considered a suspect classification as well"].)

Here, appellants allege that LAUSD policy, established through the side letter agreements with UTLA, significantly reduced teacher work hours, instructional time, and training and professional development time; limited synchronistic teacher time; and ended the District's practice of proactively reaching out to disengaged students. Appellants allege these policies— especially the reduced learning hours and failure to require student assessments—affected all students district-wide.

The complaint also alleges that LAUSD's policies disparately, and inevitably, impacted poor and minority students more than others. After the District established its distance-learning policies, appellants allege, the majority of Black and Latino secondary students appeared in class only once or twice a week—or not at all—a figure 10 to 20 percent lower than their white and Asian peers. By the ninth week of instruction, only 6 in

30

10 Black and Latino middle school students appeared in class at least once per week, compared to 8 in 10 of their peers. And although the District committed to providing all students with free electronic devices and internet connections to enable them to participate in distance learning, appellants contend many low-income students received either nonfunctional equipment or nothing at all. Plaintiffs allege that LAUSD did not remedy these failures, and others, when they were brought to the District's attention.

Although the experiences of students throughout Los Angeles undoubtedly varied, these allegations are sufficient, at the pleading stage, to state a prima facie community of interest among the proposed class.

### 3.3.2. Inter-District Discrimination

In addition to guaranteeing students a right to an education equivalent to that received by other students in the same school district, the California Constitution guarantees students "an education basically equivalent to that provided elsewhere throughout" the state. (*Butt*, *supra*, 4 Cal.4th at p. 685; *id*. at p. 692 ["Because education is a fundamental interest in California, denials of basic educational quality on the basis of district residence are subject to strict scrutiny."]; Cal. Const., art. I, § 7; art. IV, § 16.) A finding of constitutional disparity occurs when a school "district's program, viewed as a whole, falls fundamentally below prevailing statewide standards . . . ." (*Butt*, at pp. 686–687.) Here, appellants allege, in the eighth cause of action, that LAUSD policy, established in the side letter agreements, violated this right.

The complaint alleges that "the prevailing statewide standards are established by the LAUSD's policies before the

31

pandemic, SB 98's requirements, and the policies implemented by the four next largest public school districts in California—San Diego Unified School District, Fresno Unified School District, Elk Grove Unified School District, and Long Beach Unified School District." In particular, it alleges that the LAUSD policies established in the side letter agreements fell "fundamentally below these prevailing statewide standards because each provided less total instructional time than the LAUSD provided before the pandemic and all of the four next largest public school districts in California."

Further, the complaint alleges the policies established in the side letters did not comply with SB 98. For example, plaintiffs allege that LAUSD failed "to provide the minimum instructional minutes required by SB 98" (see former § 43501), violated "SB 98's requirements that students receive an education that is aligned to grade level standards and provides a level of quality and intellectual challenge that is substantially equivalent to what students would have received in person" (see former § 43503, subd. (b)(2)), and violated SB 98's attendance and engagement requirements (see former § 43504, subds. (d)–(g)). Plaintiffs allege that LAUSD did not remedy these failures, and others, when they were brought to the District's attention.

As with the intra-district causes of action, these allegations are sufficient, at the pleading stage, to state a prima facie community of interest among the proposed class.

In sum, we conclude the trial court erred by granting LAUSD's motion to strike, sustaining UTLA's demurrer, and striking the prayer for relief on class grounds. "We do not hold," however, "that a class action is appropriate in this case. That issue is for the trial court to determine at a later stage of the

32

case." (*Blakemore*, *supra*, 129 Cal.App.4th at p. 59.) At that point, the court will presumably need to consider anew the complicated question of whether the relief plaintiffs seek is manageable on a class basis—an issue we need not and do not decide. Rather, as in *Blakemore*, "'we hold only that no argument has been made which would allow the judge to rule at the pleading stage that the suit was without the realm of probability of being properly tried as class litigation.'" (*Ibid.*, fn. omitted; see *Tucker*, *supra*, 208 Cal.App.4th at p. 230 ["Ultimately, it is still up to the trial court, in the exercise of its considerable discretion, to determine if Plaintiffs' [claims] for equitable relief are appropriate for class treatment at all."].)

4. **Respondents' other challenges to the prayer for relief likewise fail.**

Respondents also contend that the trial court properly granted LAUSD's motion to strike the prayer for relief because injunctions may only operate prospectively and because any relief that could be awarded would violate the separation of powers doctrine.[16]

Because the trial court did not reach these issues, appellants ask us to remand the matter for decision in the first instance. We decline to do so. We must affirm the judgment of dismissal "if the unamended complaint is objectionable on any ground raised by the demurrer" or motion to strike. (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452,

---

16    Although LAUSD has forfeited the former claim by failing to develop it, UTLA adequately addresses the issue, thereby obviating any prejudice to appellants. We therefore exercise our discretion to consider the claim as to both respondents.

457.) Both of these issues were raised below. In addition, each contention "entails the resolution of a mixed question of law and fact that is predominantly one of law, inasmuch as it 'requires a critical consideration, in a factual context, of legal principles and their underlying values' rather than merely 'experience with human affairs.'" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) Because we are as equipped to evaluate such questions as the court below, and in the interest of judicial economy, we reject appellants' request for remand and turn to consider these issues.

### 4.1. Remedial injunctive relief is proper.

Respondents contend appellants' prayer for relief was properly stricken because injunctions cannot issue to restrain completed acts. Appellants argue that respondents have conflated completed acts (the expiration of the challenged distance-learning policies) with harm caused by those acts (learning loss and disengagement stemming from the policies). Because the alleged harm is ongoing, appellants contend, injunctive relief is proper. We agree with appellants.

The dispute appears to lie in the difference between mandatory and prohibitory injunctions. A prohibitory injunction is "a writ or order requiring a person [or entity] to refrain from a particular act." (Code Civ. Proc., § 525.) A mandatory injunction, by contrast, requires a person to take affirmative action that changes the parties' positions. (See Civ. Code, § 3367, subd. (2); *ITV Gurney Holding Inc. v Gurney* (2017) 18 Cal.App.5th 22, 29.)

The "purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act"; such relief exists "only to prevent threatened injury and has no application to wrongs that have

34

been completed." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 [injunction not warranted to restrain defendant from contacting plaintiff's employees where defendant had committed only one act of violence and there was no showing of any threat of future acts].) Because a prohibitory injunction does not serve to punish past acts, it should not be issued unless there is "evidence establishing the reasonable probability the acts will be repeated in the future." (*Ibid.*)

A mandatory injunction, on the other hand, orders a party to take action to remedy some harm. Thus, mandatory "injunctive relief has been upheld where the defendant's completed act causes ongoing harm or is part of a continuing course of conduct." (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1156 (*Sahlolbei*); see *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 394 ["It is well established the judiciary possesses broad discretion in deciding the type of equitable relief to fit a case's particular circumstances. [Citation.] This broad discretion includes a court's power to grant a mandatory injunction."].)

In *Sahlolbei*, for example, a plaintiff physician who had been denied reappointment to a hospital staff sought an injunction requiring reinstatement of his staff privileges. (*Sahlolbei*, *supra*, 112 Cal.App.4th at pp. 1144–1145.) The trial court denied injunctive relief based on the completed act principle, and the appellate court reversed. (*Id.* at pp. 1156–1157.) The appellate court explained that notwithstanding the completed act, injunctive relief was proper where "the harm was a continuing interference with the plaintiff's rights, which could be prevented by granting an injunction." (*Id.* at p. 1157.) In other words, the "harm plaintiff sought to prevent—his exclusion from

35

the staff without a prior hearing—continued as long as his staff privileges remained terminated. The continuation of the harm could be prevented by reinstating his privileges and ordering a hearing as a prerequisite to any subsequent termination." (*Ibid*.)

Likewise, in *Dibona v. Matthews*, community college administrators cancelled a drama course to prevent the performance of a controversial play. (*Dibona v. Matthews* (1990) 220 Cal.App.3d 1329, 1333–1336.) The play was performed off-campus instead. (*Id*. at p. 1336.) The trial court held that because the summer session in which the class was to have been held had ended, the case was moot. (*Id*. at pp. 1336–1338.) The appellate court reversed. It noted that although the summer session was over, the student who brought the action continued to seek academic credit for having completed the class based on his performance in the off-campus play. (*Id*. at p. 1339.) Thus, it held, if the student could show he had satisfied all the course requirements except those made impossible by the college, the court could properly conclude that course credit should be awarded and order appropriate injunctive relief. (*Ibid*.)

Here, appellants contend the District's distance-learning policies have caused continuing harm in the form of learning loss and disengagement. Should they be proven, the court has broad powers to remedy those harms, including by ordering remedial injunctive relief.

### 4.2. Remedial injunctive relief does not violate the separation of powers doctrine.

Respondents argue that the trial court properly struck the prayer for relief because any remedial injunctive relief that could be awarded would necessarily violate the separation of powers doctrine. We disagree.

UTLA's argument rests largely on *Campaign for Quality Education v. State of California* (2016) 246 Cal.App.4th 896 (*Quality Education*). In that case—a split decision that drew both a concurrence and a lengthy dissent—the appellate court held that the California Constitution does not guarantee children the right to an education of any minimum quality.[17] After finding no support for such a right in the text of the Constitution, the court opined in dicta that "'the question of educational quality is inherently one of policy involving philosophical and practical considerations that call for the exercise of legislative and administrative discretion.'" (*Id.* at p. 911.)

LAUSD rests its argument on *Crawford v. Board of Education* (1976) 17 Cal.3d 280. Yet that case addressed *how* the courts should fashion remedies to constitutional violations; it did not hold that courts should avoid injunctive relief in general.

Fundamentally, at the heart of both respondents' arguments lies the premise that LAUSD is already taking steps to ameliorate pandemic learning loss, and the courts may not second-guess the District's methods. As we discuss below, however, the impact, if any, of the District's remedial programs is a question of disputed fact that cannot be resolved at the pleadings stage. (See section 5.4, *post*.)

The courts have long recognized that while they may not craft educational policy out of whole cloth, they are manifestly

---

17    Appellants neither argue that *Quality Education* was wrongly decided nor ask us to consider that constitutional question anew. We note, however, that no other appellate court has examined the issue in detail, and *Quality Education* is not binding on us. (See *Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at pp. 455–456.)

empowered to correct constitutional violations that are brought before them. Should appellants prove the discrimination they have alleged, it will be up to the trial court to craft an appropriate remedy based on the circumstances then in effect, unless the parties agree that the District and UTLA have by then already embarked on appropriate remedial action. Courts routinely impose injunctive relief to remedy unconstitutional or otherwise unlawful actions by government agencies.

### 4.3. UTLA is a necessary party notwithstanding the expiration of the side letter agreements.

UTLA argues that even if changed circumstances do not moot the entire case, it should be dismissed from the matter because the expiration of the side letters extinguishes the reason for its presence. Appellants respond that UTLA remains a necessary party because any ultimate relief in appellants' favor would impact the teachers and their contractual rights. Appellants have the better argument.

Code of Civil Procedure section 389, subdivision (a), governs whether a person, sometimes called a "necessary party," must be joined as a party to a lawsuit.[18] (*TG Oceanside, L.P. v.*

---

18    It provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

*City of Oceanside* (2007) 156 Cal.App.4th 1355, 1365.)
"Section 389 calls upon the trial court to weigh practical realities
and other considerations in determining whether a person is
necessary or indispensable." (*Pinto Lake MHP LLC v. County of
Santa Cruz* (2020) 56 Cal.App.5th 1006, 1014.) "The inquiry
under subdivision (a)(2), applicable here, is 'whether the person is
one whose rights must necessarily be affected by the judgment in
the proceeding.'" (*Id.* at p. 1013.)

    *Reed v. United Teachers L.A.* is instructive. (*Reed v. United
Teachers Los Angeles* (2012) 208 Cal.App.4th 322.) In that case,
plaintiffs entered into a consent decree with LAUSD "to resolve
claims that teacher layoffs had disproportionately and adversely
impacted the [s]tudents' constitutional and statutory rights to
equal educational opportunities, and that additional layoffs
would exacerbate the harm." (*Id.* at p. 327.) UTLA, a non-settling
defendant, objected, arguing that because the consent decree had
the potential to abrogate the seniority rights of its members, it
was entitled to a decision on the merits as a matter of federal due
process. (*Ibid.*) Our colleagues in Division Two agreed, holding
that due process required a decision on the merits before a
consent decree or judgment could affect teachers' contractual and
statutory rights. (*Id.* at pp. 329–336, 339.)

    Here, appellants seek remedies, such as additional
instructional time, that carry the potential to impact the
collectively-bargained-for contractual rights of UTLA's members.
Indeed, UTLA has previously represented that it would seek to

---

by reason of his claimed interest. If he has not been so joined, the
court shall order that he be made a party." (Code Civ. Proc.,
§ 389, subd. (a).)

set aside "any request for relief involving modifying or eliminating the defending parties' collective bargaining agreements." As such, UTLA remains a necessary party to this lawsuit. (See *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667–668 ["[a]n '"indispensable party is not bound by a judgment in an action in which he was not joined"'"]; *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 692 [a party is indispensable where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third party not joined].)

**5.    Appellants' constitutional causes of action are not moot.**

Appellants allege that for a year-and-a-half, LAUSD policy ensured students received an unconstitutional education, that the policies harmed students, and that the resulting learning deficits persist. Respondents contend that any constitutional violations ended with distance learning, rendering appellants' claims moot. While any violations may be over, the harm allegedly remains. Having concluded the trial court can still grant appellants a remedy for any past harms, we further conclude appellants' claims are justiciable.

**5.1.   Legal Principles**

It is well settled that appellate courts will decide only actual controversies. We will not opine on moot questions or abstract propositions, nor declare principles of law that cannot affect the matter at issue on appeal. (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 226–227 (*Giles*).) "A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief." (*Simi Corp. v. Garamendi* (2003) 109

40

Cal.App.4th 1496, 1503; *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 95–96 (*Panoche Energy Center*) [availability of "effectual relief" is the "pivotal question" in mootness analysis].) By the same token, an "appeal is not moot . . . where 'a material question remains for the court's consideration,' so long as the appellate decision can grant a party to the appeal effectual relief." (*Panoche Energy Center*, at p. 96; see, e.g., *San Diego Police Department v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 564 [appeal from an expired restraining order was not moot where expired order could have collateral consequences in future proceedings].)

Courts regularly find cases non-justiciable when injunctive relief is sought but, pending appeal, the act sought to be enjoined has been performed. (*Giles*, *supra*, 100 Cal.App.4th at p. 227.) In *Giles*, for instance, plaintiffs sued to enjoin as illegal a county's expenditure of public funds to hire private contractors to provide services under a state welfare program. Because those contracts had expired and were fully performed pending appeal, the appeal was dismissed as moot. (*Id.* at pp. 227–228; see also *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557 [case moot where challenged contract had expired, a new bidding process took place, and court could not award the contract to disappointed bidder]; *Jennings v. Strathmore Public Utility Dist.* (1951) 102 Cal.App.2d 548, 549 [appeal, in action to enjoin and declare invalid a public utility district contract after the contract had been awarded and work was fully completed, was moot].)

Similarly, an intervening change in the law—namely, the repeal or modification of a statute under attack or subsequent legislation correcting a challenged deficiency—that is the crux of

41

a case may result in mootness. (*Jordan v. County of Los Angeles* (1968) 267 Cal.App.2d 794, 799; see, e.g., *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704–706 [challenge to zoning ordinance based on inconsistency with general plan became moot when, during pendency of appeal, a new general plan was adopted with which the ordinance was consistent]; *O'Neal v. Seabury* (1938) 24 Cal.App.2d 308, 309–312 [ordinance superseded by regulation made pursuant to state statute]; *Equi v. San Francisco* (1936) 13 Cal.App.2d 140, 141–142 [lower court held ordinance void; city appealed but ordinance repealed pending appeal].)

For instance, a taxpayer association's claim for injunctive and declaratory relief to prevent future collection of a registration fee from people engaged in home employment was rendered moot when the city revoked the fee requirement. (*Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 249.) Likewise, the expiration of a challenged moratorium ordinance rendered moot a lawsuit challenging the ordinance. (*Colony Cove Properties, LLC v. City of Carson* (2010) 187 Cal.App.4th 1487, 1509 (*Colony Cove*).) And, when the California Department of Forestry adopted a new policy that changed its requirements and practices for timber harvest notices in a way that corrected the challenged deficiencies in those notices, the lack of an ongoing controversy rendered the case moot. (*East Bay Mun. Utility Dist. v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1119, 1132.)

But "enactment of subsequent legislation does *not* automatically render a matter moot." (*Davis v. Superior Court* (1985) 169 Cal.App.3d 1054, 1057, original italics.) The key question is still whether a court can grant effective relief in a

case. (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1158–1159; see also *Schmidt v. Superior Court* (1989) 48 Cal.3d 370, 373 [federal legislation rendering invalid, in future mobile home park, a policy restricting residency to persons 25 years old or older did not moot appeal challenging policy, where plaintiffs sought damages for enforcement of rule prior to effective date of federal legislation]; *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 120–121 [plaintiff's claim that CAL–OSHA regulations discriminated against him not rendered moot by State Department of Industrial Relations grant of temporary "'experimental variance'" from compliance with regulation; effectual relief attainable because if regulation declared invalid, plaintiff would "not need to rely upon additional, speculative variances that may or may not be granted"].)

In short, "where a court can afford the party at least some relief, even if not all the relief originally requested, the court should not dismiss a case as moot." (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031–1032.)

### 5.2. This matter is not moot because the court can provide practical relief.

We conclude this matter is justiciable notwithstanding the expiration of SB 98, section 43503, and the relevant side letter agreements. Appellants claim that LAUSD's distance-learning policies unconstitutionally discriminated against certain Los Angeles students, who continue to suffer academic harm. If the trial court finds those claims have merit, it can fashion injunctive relief to address students' continuing learning deficits.

UTLA's reliance on *Cerletti v. Newsom* (2021) 71 Cal.App.5th 760 is misplaced. In that case, taxpayers brought an action seeking to declare as illegal spending under the Disaster

43

Relief for Immigrants Project, which established a $75 million
Disaster Relief Fund to support undocumented Californians
impacted by COVID-19, who were ineligible for unemployment
insurance and disaster relief due to their immigration status. (*Id*.
at pp. 762–764.) Plaintiffs filed an application for a temporary
restraining order to halt the distribution of benefits, which the
trial court denied. (*Id*. at p. 764.) Plaintiffs appealed, but, while
the appeal was pending, all $75 million in project benefits were
distributed. (*Id*. at p. 765.) Our colleagues in Division Five held
that the issue of whether the trial court should temporarily
restrain the distribution of payments was moot because the
project had provided for one-time payments, and the payments
had been made more than a year earlier. (*Id*. at p. 766.) In other
words, the case was moot because the court could not afford the
plaintiffs a remedy. Here, however, plaintiffs have identified
potential remedies.

     *County of San Diego v. Brown* is instructive. (*County of San
Diego v. Brown* (1993) 19 Cal.App.4th 1054 (*Brown*).) In *Brown*,
plaintiffs challenged the constitutionality of California's mental
health funding scheme, and the trial court found the scheme
unconstitutional. After trial but before entry of judgment,
however, realignment legislation overhauled the system for
funding county mental health services, fundamentally changing
the way state mental health resources were allocated. (*Id*. at
p. 1087.) On appeal, defendants argued that the portions of the
judgment involving constitutional and statutory issues should be
reversed and dismissed as moot. (*Id*. at p. 1088.) They reasoned
that because realignment legislation had created an entirely new
system for distributing state mental health funds to counties and

44

had ended the challenged allocation system, the constitutionality of the old system was irrelevant. (*Ibid*.)

The appellate court rejected that contention. It held that even if realignment had mooted the forward-looking portions of the judgment involving the constitutionality of funding and bed allocations, the court was nevertheless required to resolve the constitutional issues to determine the propriety of injunctive relief based on the past violations. (*Brown*, *supra*, 19 Cal.App.4th at p. 1088.) That is, the court concluded that, notwithstanding the former statute's repeal, if the former statute was unconstitutional, the court still had the power to approve injunctive relief to remedy resulting harms.

Finally, in *Grier v. Alameda–Contra Costa Transit Dist.*, as in this case, the plaintiffs asserted the illegality of an expired labor contract. (*Grier v. Alameda–Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 329–331.) There, a proposed class of bus drivers and their union brought an action for declaratory relief and damages, alleging that a provision of their collective bargaining agreement with a transit district violated the Labor Code by requiring drivers who arrived late to work without pay for periods exceeding the time actually lost. (*Ibid*.) Although the parties subsequently adopted a new collective bargaining agreement that did not contain the provision, the legality of the former provision was not moot because the question of damages for any past violations of state law remained. (*Ibid*.)

Here, appellants allege that during the pandemic, LAUSD adopted unconstitutional distance-learning policies that inevitably and disparately harmed students. They further allege that notwithstanding the return to in-person instruction, those harms persist, and the court can fashion a remedy to alleviate

them. Accordingly, under the required standard of review, the trial court erred by sustaining LAUSD's demurrer to the first, second, and eighth causes of action on mootness grounds.

### 5.3. Appellants can establish a prevailing statewide standard based on the expired statute.

Respondents insist that the expiration of the remote-learning statutes deprives appellants of a prevailing statewide standard by which to measure the District's distance-learning policies—a necessary element of the eighth cause of action for inter-district discrimination. But respondents cite no relevant authority for that proposition. Both *Colony Cove*, *supra*, 187 Cal.App.4th 1487 and *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388 involved requests for declaratory relief; the plaintiffs were not seeking remedies for past harms. (*Colony Cove*, at p. 1492 [petitioners sought a writ of mandate directing the city to vacate an ordinance]; *Gafcon*, at p. 1404 ["Because declaratory relief operates prospectively only, rather than to redress past wrongs, Gafcon's remedy as against Ponsor lies in pursuit of a fully matured cause of action for money, if any exists at all."].)

Plainly, the constitutionality of expired policies is measured by reference to the statewide standards that existed when the policies were in effect. Accordingly, the trial court erred by sustaining LAUSD's demurrer to the eighth cause of action on mootness grounds.

### 5.4. The impact of the District's remedial actions is a question of disputed fact.

UTLA claims that appellants' proposed relief has been rendered moot by the remedial actions the District is already

46

undertaking. Although the court took judicial notice of various documents relating to LAUSD's remedial plans, it did not judicially notice those documents for their truth, and it expressed no opinion on whether the new programs eliminated the harm the previous policies allegedly caused. We agree with appellants, therefore, that the nature and impact of the District's current policies are questions of disputed fact that cannot be resolved at the demurrer stage. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113–114 [""A demurrer is simply not the appropriate procedure for determining the truth of disputed facts.""].)[19]

## 6. Appellants' challenge to the complex civil court's automatic-stay rule is not justiciable.

Although we have concluded appellants' constitutional claims are justiciable, the same cannot be said of their challenge to the complex civil court's supposed automatic-stay rule.

Appellants insist that the complex civil court, which handles class actions in Los Angeles, has an informal practice of staying all filings until an initial case status conference can be held. They claim this practice delayed their preliminary injunction motion for an entire school year. Appellants contend the practice conflicts with both the Civil Code and the Rules of Court and ask us to invalidate it. Respondents argue any delay

---

[19] For the same reason, we also deny appellants' request for judicial notice of an LAUSD press release about post-pandemic problems and a Los Angeles Times article about deep pandemic setbacks in math, which were not before the court below. LAUSD opposed the request and objected to various newspaper articles on the same topic cited in appellants' opening brief.

was the result of appellants' strategic choices rather than the complex court's filing practices, and, in any event, the prospective injunctive relief appellants sought is no longer available to them, rendering the issue moot. We decline to reach this issue.[20]

Through their request for a preliminary injunction, appellants were seeking to enjoin side letter agreements and distance learning polices, all of which have now expired. Because we cannot turn back the clock to offer appellants a remedy, the issue is non-justiciable. (*Giles*, *supra*, 100 Cal.App.4th at p. 227.)

Nor is this a question of broad public interest that is likely to evade timely review without our intervention. (See *Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1486.) Appellants had a remedy: They could have sought a writ of mandate. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1350–1351.) Although they chose not to seek writ relief in this case, future plaintiffs can.

---

20      In light of the non-justiciability of this claim, we do not reach LAUSD's contention that appellants forfeited this argument by failing to challenge the practice's validity below.

## DISPOSITION

The judgment is reversed as to LAUSD and UTLA, and the matter is remanded to the trial court with directions to vacate its orders sustaining the demurrers to the second amended complaint and granting the motion to strike. The court is directed to enter new orders denying the motion to strike, overruling UTLA's demurrer, overruling LAUSD's demurrer as to the first, second, and eighth causes of action, and sustaining LAUSD's demurrer without leave to amend as to the third, fourth, fifth, sixth, and seventh causes of action. The judgment is affirmed as to former Superintendent Beutner.

Appellants shall recover their costs on appeal.

## CERTIFIED FOR PUBLICATION

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

49